2000 ME 105

**Richard H. TARBUCK**

v.

**Evelyn P. JAECKEL.**

Supreme Judicial Court of Maine.

Submitted on Briefs Feb. 8, 2000.

Decided May 30, 2000.

David P. Lipman, Tracie L. Adamson, Lipman & Katz, P.A., Augusta, for plaintiff.

Ellyn C. Ballou, South Freeport, Francis M. Jackson, Jackson & MacNichol, Portland, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] Evelyn Jaeckel appeals from the judgment of the Superior Court (Kennebec County, *Atwood, J.*) affirming the judgment of the District Court (Augusta, *Griffiths, J.*) awarding interest on a child support arrearage it had determined that Jaeckel incurred pursuant to a divorce decree. The award of interest followed a prior remand by the Superior Court (*Marden, J.*). Jaeckel argues on appeal that the District Court erred when it dismissed her motion for relief from judgment and granted the motion of Jaeckel's ex-husband, Richard Tarbuck, for enforcement of the parties' divorce decree. She also argues that the court erred when it failed to offset its judgment with amounts Jaeckel claims are owed to her. Finally, Jaeckel argues that the District Court properly waived interest in its initial judgment and the Superior Court's remand for an award of interest was error. Although we affirm the District Court's dismissal of Jaeckel's motion for relief from judgment and its order enforcing the parties' divorce decree, including its determination of Jaeckel's child support arrearage, we vacate the award of interest and modify the judgment to reinstate the District Court's initial waiver of interest.

## I. FACTS

[¶ 2] Richard Tarbuck and Evelyn Jaeckel were married in 1965. They had two children together, Brian in 1970 and Leigh in 1972. Tarbuck and Jaeckel divorced in 1981. Their settlement agreement was incorporated into the divorce decree by the District Court.

[¶ 3] The settlement agreement provided for custody of the children, child support and a division of the parties' property. Pursuant to the agreement, Jaeckel would have custody of the children and would receive twenty dollars per week, per child from Tarbuck. If the children resided with Tarbuck, Jaeckel would pay the same amount per week, per child to him. The agreement also divided the parties' property between them as follows: Tarbuck was granted the marital residence in Pittston along with the responsibility for the mortgage. Jaeckel would retain a residence in Huntington, Massachusetts that she had inherited from her family. Three other properties held by the couple, an additional property in Pittston, one in Augusta and one in North Hampton, New Hampshire, would continue to be held jointly. The income from these properties would be shared and either party could initiate the sale of one of the properties by giving ninety days' notice to the other. When one party initiated a sale, the other party would have the right of first refusal to the purchase of the property.

[¶ 4] Shortly after the parties' divorce, Brian moved in with Tarbuck. Leigh continued to live with Jaeckel. As a result, neither party paid the other any child support. In the fall of 1981, Jaeckel moved to the North Hampton residence with Leigh by mutual agreement with Tarbuck. Tarbuck and Jaeckel disagree, however, over the terms of the arrangement.

[¶ 5] Jaeckel contends that she and Tarbuck agreed that she would move into the house in North Hampton and take over the mortgage payments. That property would belong to her in exchange for Tarbuck taking over financial responsibility for the Augusta and Pittston properties, which he would then own. They did not exchange any form of conveyance of any of the properties, however. Tarbuck maintains that he and Jaeckel agreed that she would live in the North Hampton house and be responsible for its expenses while he would take care of the other two properties, but they did not agree that they would split the actual ownership of the properties. He explained that this arrangement was to facilitate visitation for both parents and cut down on travel time.

[¶ 6] In March 1983, Leigh also moved in with Tarbuck. Tarbuck sought child support payments from Jaeckel, including initiating an action through the State seeking to enforce the parties' divorce decree that provided for the support. He did not pursue the enforcement action, however. The parties eventually sold one of the jointly held properties in July 1984. Tarbuck kept the entire proceeds from the sale, which amounted to $7377. He testified that Jaeckel allowed him to keep the proceeds because he was struggling financially and characterized it as a loan. Jaeckel testified that Tarbuck kept the proceeds because of their prior arrangement and also noted that she did not intend that he keep the proceeds in lieu of child support.

[¶ 7] In the fall of 1988, Tarbuck attempted to reinstate a child support enforcement action through the State, but again, it was not pursued. In October 1989, Tarbuck sent Jaeckel a letter indicating that he wished to sell the remaining two properties. He also informed her that she had a substantial child support arrearage. Having received no response, Tarbuck sent a listing agreement for the Pittston property seeking Jaeckel's signature. She refused to sign and the parties were unable to resolve the disagreement. In the spring of 1989, Jaeckel sent a letter to Tarbuck offering to convey the Pittston property to him in exchange for the North Hampton property. Tarbuck did not accept this offer.

[¶ 8] Tarbuck again sought Jaeckel's cooperation in selling the Pittston and North Hampton properties in 1994. When she refused, he filed a motion for child support arrearage that also sought enforcement of the property division provision of the parties' divorce decree. Jaeckel opposed the motion and sought relief from the judgment of divorce pursuant to M.R. Civ. P. 60(b)(5) and (6).

[¶ 9] Following a hearing on the matter, the District Court dismissed Jaeckel's motion for relief from judgment as untimely and made an alternate finding that she was not entitled to relief on the merits. The court also determined that Tarbuck had not waived his right to child support and determined the amount of arrearage to be $9750. The court did not award interest on the arrearage, however, as Tarbuck had requested. The court did make a finding of contempt on the part of Jaeckel, though, determining that she had a past ability to meet her child support obligations. Finally, the court ordered the sale of the two remaining jointly held properties. The court ordered that the proceeds from the sale be divided equally, finding that Jaeckel had failed to establish that any increase to the fair market value of the North Hampton property was due to improvements made by her.

[¶ 10] In response to a motion by Jaeckel for additional findings of fact, the court found explicitly that Tarbuck and Jaeckel had not reached an agreement on the transfer of ownership of the properties the couple held jointly following the divorce. The court also found that the expenditures made by Jaeckel on the North Hampton house were attributable to maintenance of the residence.

[¶ 11] Jaeckel appealed to the Superior Court and Tarbuck cross-appealed. The Superior Court vacated the finding of contempt and remanded for additional findings of fact on the issue. The court also remanded to the District Court for an award of post-judgment interest on the child support arrearage, noting that the statute governing post-judgment interest mandated its award. Because Tarbuck withdrew his request for a finding of contempt, however, the District Court merely awarded post-judgment interest on the arrearage. Jaeckel again appealed to the Superior Court. The Superior Court determined that Jaeckel had waived the issue of post-judgment interest before the District Court and, because it had addressed the other issues raised by Jaeckel in its prior decision, denied her appeal. She then appealed to this Court.

## II. THE MERITS OF THE DISTRICT COURT JUDGMENT

■ [¶ 12] When the Superior Court acts as an intermediate appellate court, we review the decision of the District Court directly. *See Beck v. Beck*, 1999 ME 110, ¶ 6, 733 A.2d 981, 983. Jaeckel argues that the District Court erred by dismissing her motion for relief from judgment and by enforcing the property division in the divorce decree despite her argument of promissory estoppel.[1]

■ [¶ 13] Rule 60(b)(5) and (6) of the Maine Rules of Civil Procedure, governing motions for relief from judgment, provides:

---

1. Jaeckel also argues that the District Court erred by not awarding her offsets for half of the proceeds from the sale of the Augusta property and for a handwritten "IOU" for $9000 she introduced in evidence to support her argument that the parties had entered subsequent agreements altering the terms of their divorce decree. Jaeckel failed to file counterclaims for either of these amounts, however, *cf.* M.R. Civ. P. 13(a) & (b), and is seeking these offsets for the first time on appeal to this Court. We have repeatedly stated that we will not address issues raised for the first time on appeal. *See, e.g., Berg v. Bragdon*, 1997 ME 129, ¶ 9, 695 A.2d 1212, 1214. We therefore decline Jaeckel's invitation to find error in the District Court's failure to address potential offsets that were not before it. *See also Federal Deposit Ins. Corp. v. Notis*, 602 A.2d 1164, 1165 (Me.1992) (noting "[r]ecoupment must be pleaded affirmatively, and if it is not raised it is ordinarily deemed waived").

On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order, or proceeding for the following reasons; . . . (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Rule 60(b) also provides that motions brought pursuant to subsections (5) and (6) should be brought "within a reasonable time ." M.R. Civ. P. 60(b). We review a denial of a motion for relief from judgment for an abuse of discretion. *See Hamill v. Liberty*, 1999 ME 32, ¶ 4, 724 A.2d 616, 618. "When the trial court has correctly understood the facts and the law relevant to its analysis, we will defer to its ability to give weight to the appropriate factors under the law, and will find an abuse of discretion only where the court made a 'serious mistake' in weighing those factors." *Id.* (citing *West Point–Pepperell, Inc. v. State Tax Assessor*, 1997 ME 58, ¶ 7, 691 A.2d 1211, 1213).

▮ [¶ 14] Jaeckel's motion for relief from judgment came fourteen years after the divorce decree was filed and six and one half years after she first became aware that there was a dispute regarding the ownership of the properties. The District Court's determination that these delays were unreasonable was not an abuse of discretion. *Compare Zink v. Zink*, 687 A.2d 229, 232 (Me.1996) (dismissal of Rule 60(b)(6) motion as untimely brought four years after judgment was not an abuse of discretion), *with Scott v. Lipman & Katz, P.A.*, 648 A.2d 969, 972 (Me.1994) (court's determination that Rule 60(b)(6) motion was timely when filed 364 days after court accepted settlement was not an abuse of discretion). Therefore, the court did not err by dismissing her motion.

▮ [¶ 15] Furthermore, we find no error in the court's assessment of the merits of Jaeckel's motion for relief from judgment. Jaeckel bore the burden of demonstrating that the divorce decree should be set aside pursuant to Rule 60(b). *See Beck*, 1999 ME 110, ¶ 6, 733 A.2d at 983. Even assuming that the court accepted Jaeckel's representations that the parties had subsequently modified their divorce decree by mutual agreement, this does not necessarily require the equitable remedy of setting aside an otherwise final judgment pursuant to Rule 60(b). In *Beck* we found that the court did not abuse its discretion by denying a husband's motion for relief from his prior divorce judgment and noted, "[i]f [the parties] had agreed to relieve [the husband] of his child support payments and simultaneously relieve [the wife] of her mortgage payments, a court modification of the divorce judgment to reflect that agreement should have been sought." *Id.* at ¶ 7, 733 A.2d at 984. In this case, however, the court explicitly found that Tarbuck and Jaeckel had *not* reached an agreement altering the ownership of the property provided for in the settlement agreement. Therefore, the court's assessment of the merits of Jaeckel's motion for relief from judgment did not exceed the bounds of its discretion.

▮ [¶ 16] With respect to the court's decision to enforce the terms of the divorce decree governing the property division between the parties, Jaeckel argues that the court did not properly consider her claim of promissory estoppel. We have adopted the formulation of the equitable doctrine of promissory estoppel found in the Restatement (Second) of Contracts:

A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy

granted for breach may be limited as justice requires.

*See Daigle Commercial Group, Inc. v. St. Laurent,* 1999 ME 107, ¶ 14, 734 A.2d 667, 672 (citations omitted).

■ [¶ 17] The court found, however, that one of the essential elements, i.e., a promise, was missing when it made its findings of fact in response to Jaeckel's Rule 52 motion:

> Subsequent to the divorce Plaintiff and Defendant held several discussions concerning management of the respective parcels of real estate resulting in an agreement that Plaintiff would manage the properties in Augusta and Pittston, Maine, while Defendant would manage the property located in North Hampton, New Hampshire. *The parties did not reach an agreement as to the transfer of said properties, however.*

(Emphasis added.) We review findings of fact for clear error and will affirm unless there is no credible evidence in the record to support the findings. *See Dowley v. Morency,* 1999 ME 137, ¶ 13, 737 A.2d 1061, 1066–67.

■ [¶ 18] Although Jaeckel testified that there was such an agreement, Tarbuck explicitly denied ever agreeing to give up his interest in the North Hampton property in exchange for Jaeckel giving up her interests in the Augusta and Pittston properties. We give deference to a trial court's determinations regarding credibility. *See Estate of Siebert,* 1999 ME 156, ¶ 10, 739 A.2d 365, 368. The District Court did not commit clear error by rejecting Jaeckel's representations that Tarbuck had promised to give up his interest in the North Hampton property and finding that the parties never reached a separate agreement regarding the ownership of the disputed properties. The court's finding that there was no promise on which Jaeckel could rely thereby foreclosed her argument of promissory estoppel in defense to the enforcement action. Therefore, we affirm the judgment of the District Court enforcing the terms of the

parties' divorce decree. Furthermore, because Jaeckel's arguments regarding the amount of arrearage were raised for the first time on appeal, *see* footnote 1, *supra,* we affirm the amount of child support arrearage awarded by the court.

## III. POST–JUDGMENT INTEREST

[¶ 19] Jaeckel also argues that the District Court's initial waiver of interest was proper, that the Superior Court's order remanding the District Court's judgment with a mandate to award interest was error and that the District Court's subsequent order pursuant to that mandate was error. We agree.

[¶ 20] In addition to seeking enforcement of the parties' property division and the child support arrearage that had accrued, Tarbuck also specifically sought an award of interest on the arrearage. Title 14, section 1602–A, which governs interest on judgments, provides:

> From and after the date of entry on an order of judgment, including the period of the pendency of an appeal, interest shall be allowed at a rate:
>
> ... For actions in which the damages claimed or awarded do not exceed the jurisdictional limit of the District Court set forth in Title 4, section 152 [$30,000], of 15% per year ....
>
> ....
>
> ... On petition of the nonprevailing party and on a showing of good cause, the trial court may order that interest awarded by this section shall be fully or partially waived.

14 M.R.S.A. § 1602–A (Supp.1999); *see also Allen v. Allen,* 629 A.2d 1228, 1230 (Me.1993) (noting that the right to payment of child support becomes vested as the support comes due and one fixed rate of interest applies to that amount starting at that time).

[¶ 21] Although not well articulated or clearly presented, Jaeckel argued in both her responsive pleading and in her written

closing argument to the District Court that interest should not be awarded.[2] In her written final argument, Jaeckel argued to the District Court that it should not award interest because there had been such a long delay in Tarbuck's enforcement action. *Cf. Austin v. Austin,* 2000 ME 61, ¶¶ 9–10, 748 A.2d 996, 1000 (requesting that court not "penalize" him for wife's dilatory conduct in enforcing property division constituted a sufficient petition for waiver of interest on the part of the husband).

[¶ 22] In its first order, the District Court otherwise granted the relief Tarbuck sought, but did not award him post-judgment interest. The Superior Court remanded the judgment to the District Court with a mandate that there be an award of interest, indicating that the statute governing post-judgment interest states that interest "shall be allowed." The District Court entered a judgment consistent with this mandate and the Superior Court then affirmed. Jaeckel argues that the District Court did not abuse its discretion by initially waiving post-judgment interest and that the Superior Court erred as a matter of law when it determined that the award of interest is mandatory. Therefore, she argues, the subsequent order of the District Court awarding interest pursuant to the Superior Court's mandate was error.

■ [¶ 23] As a preliminary matter, we note that the issue of whether the District Court's initial waiver of interest was an abuse of discretion is properly before us. A party may only appeal from a Superior Court judgment ordering remand if the remand merely requires that the court address a procedural matter or a matter ancillary to the issue on which review is

sought. *See Wheeler v. Maine Unemployment Ins. Comm'n,* 477 A.2d 1141, 1145 (Me.1984). Otherwise, a Superior Court judgment ordering remand is interlocutory and, therefore, not appealable.[3] *See, e.g., Gagnon v. Allstate Ins. Co.,* 635 A.2d 1312, 1314 (Me.1994) (dismissing appeal and determining that Superior Court's judgment remanding to District Court was interlocutory); *Harris Baking Co. v. Maine Employment Sec. Comm'n,* 457 A.2d 427, 428 (Me.1983) (determining consent judgment entered by Superior Court remanding case to administrative agency was interlocutory and not appealable); *Inhabitants of Pittsfield v. Chandler,* 457 A.2d 1122, 1122–23 (Me.1983) (mem.) (dismissing appeal from Superior Court's remand as interlocutory). Because of the nature of the Superior Court's remand in this case, Jaeckel could not have properly appealed to this Court from its remand to the District Court and its determination that interest in this case was mandatory. The Superior Court had remanded both for an award of interest and for further findings of fact on the issue of contempt.

■ [¶ 24] Additionally, although the Superior Court did not explicitly retain jurisdiction with its remand as generally recommended, *see Hanson v. Hanson,* 654 A.2d 424, 425 n. 3 (Me.1995); *Harding v. Commissioner of Marine Resources,* 510 A.2d 533, 536 (Me.1986); *Sanborn v. Town of Eliot,* 425 A.2d 629, 629 (Me.1981), we have determined that when the Superior Court remands specifically for findings of fact on a particular matter, it implicitly retains jurisdiction, *see Hanson,* 654 A.2d at 425. Although Tarbuck ultimately withdrew his request for relief regarding the issue on which the Superior Court requested findings of fact, the Superior Court did

---

2. Although we find that Jaeckel's arguments were sufficient to raise the issue of waiver of post-judgment interest, we stress that parties seeking a waiver of post-judgment interest should make it clear that they are petitioning for such relief. Waiver of post-judgment interest is the exception and not the rule. *See* 14 M.R.S.A. § 1602–A (Supp.1999).

3. We have created exceptions to this final judgment rule. *See, e.g., Williams v. Williams,* 1998 ME 32, ¶¶ 6–7, 706 A.2d 1038, 1039–40 ("judicial economy exception").

not thereby lose its jurisdiction. As a result, Jaeckel did not need to reargue the issue of waiver of post-judgment interest the second time the case came before the District Court in order to preserve it for appeal. *Cf. Hanson,* 654 A.2d at 425 (holding that wife did not need to file a second notice of appeal to the Superior Court following judgment entered on remand by District Court in case in which Superior Court had retained jurisdiction on remand).[4]

[¶ 25] Because we find that the District Court did not abuse its discretion by waiving post-judgment interest in this case[5] and because we find that the Superior Court erroneously determined that the statute governing post-judgment interest requires its award in all cases, *see* 14 M.R.S.A. § 1602–A (Supp.1999) (providing for waiver on showing of good cause), we modify the portion of the judgment of the District Court awarding interest pursuant to the Superior Court's mandate and reinstate the District Court's initial waiver of interest.

The entry is:

Judgment modified in accordance with the opinion herein to delete the award of interest, and as so modified, affirmed.

---

4. Although the Superior Court erroneously determined that Jaeckel had waived her argument regarding waiver of interest by not pursuing it on remand and therefore did not address the merits in her second appeal, it appears on the face of things that the doctrine of law of the case would have prevented the Superior Court from revisiting its previous decision on the issue anyway. Furthermore, the Superior Court's mandate on remand did not order that the issue of post-judgment interest be reconsidered, rather it simply ordered that interest be awarded. Therefore, it does not appear that reargument on the issue in the District Court would have been appropriate.

5. Although the District Court did not make explicit findings of fact to support its denial of Tarbuck's request for post-judgment interest. Tarbuck failed to file a motion pursuant to M.R. Civ. P. 52 requesting such findings. We therefore must assume that the court made the necessary findings in support of its decision. *See Markley v. Semle,* 1998 ME 145, ¶ 4, 713 A.2d 945, 946 (noting that when a party does not move for specific findings of fact, we assume the trial court found all of the facts necessary to support its decision).