2008 ME 80

**JADE REALTY CORP.**

v.

**TOWN OF ELIOT.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Feb. 28, 2008.

Decided: May 8, 2008.

Mark V. Franco, Esq., Robert C. Hatch, Esq., Thompson & Bowie, LLP, Portland, ME, for the Town of Eliot.

Durward W. Parkinson, Esq., Leah B. Rachin, Esq., Bergen & Parkinson, LLC, Kennebunk, ME, for Jade Realty Corporation.

Panel: CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

MEAD, J.

[¶ 1] The Town of Eliot appeals from the judgment of the Superior Court (York County, *Fritzsche, J.*) affirming the decision of its Code Enforcement Officer (CEO) to grant a building permit to Jade Realty Corporation and vacating the decision of the Eliot Board of Appeals, which conditioned the permit upon upgrading Boyce Road to comply with the Town's building standards. The Town argues that the Superior Court erred in its interpretation of the Town's zoning ordinance. Specifically, it argues that the court erred in ruling that because the proposed access road conformed to town building standards, the intersection of the access road and Boyce Road therefore complied with town building standards. We agree and vacate the judgment of the Superior Court and affirm the judgment of the Board of Appeals.

## I. BACKGROUND

[¶ 2] Jade Realty is a New Hampshire corporation operated by Edward and Joanne Fillmore. It owns property in Eliot, Maine, some of which has been developed but the majority of which remains undeveloped. Originally, the undeveloped portion of this property was divided into seventy lots; however, as a result of negotiations following a contemporaneous dispute with the Town, this was reduced to forty-eight lots. In seeking to develop this property, Jade Realty plans to build an access road to the subdivision. The proposed access road would dead-end into Boyce Road in Eliot, forming a capital letter "T" intersection.

[¶ 3] In May 2006, Jade Realty filed for, and received, a permit to construct this access road. Prior to this, on June 14, 2005, the Town amended its zoning ordinance to provide that where a new access road connects to a public road, the inter-

section must comply with town street design and construction standards. These standards require all streets to be designed to certain specifications based on their classification as arterial, collector, or minor. Eliot, Me., Code §§ 37–70(a), 37–71 (June 16, 2007). Boyce Road is a public road and appears to be a minor road.[1] Therefore, it is required to have a fifty-foot minimum right-of-way width and must meet certain construction standards. *Id.* The Town argues, and Jade Realty does not contest, that Boyce Road does not currently meet these standards.

[¶ 4] In granting Jade Realty's permit in May 2006, the CEO apparently interpreted "intersection" in the town ordinance to refer to the line where the access road and Boyce Road would meet, rather than an imaginary rectangle representing the area of overlap represented by continuing the access road across Boyce Road to its far side. The CEO's interpretation required that only the access road meet town standards; Boyce Road itself would not have to be brought up to town standards.

[¶ 5] On June 19, 2006, several citizens of the town filed an appeal challenging the granting of the permit.[2] Following a public hearing, the Board of Appeals concluded that section 45–406 of the ordinance requires that Boyce Road, as well as the access road, be adjusted to meet the relevant town standards, and that, therefore, the CEO's action was clearly contrary to the ordinance. Jade Realty filed a M.R. Civ. P. 80B complaint in the Superior Court arguing that the Board of Appeals applied the wrong standard of review in examining the CEO's grant of the permit.

The Superior Court vacated the decision of the Board of Appeals. The Town has filed a timely appeal.

## II. DISCUSSION

■ [¶ 6] The amended ordinance reads:

[N]o new access street or road, whether public or private, providing access to more than 14 house lots or dwelling units, shall be permitted or constructed if directly connected to any public street(s), which such existing public street(s) do not meet current town street design and construction standards at the intersection(s) of any such proposed access street or road and any such public street(s). . . .

Eliot, Me., Code § 45–406(c) (June 16, 2007). The Superior Court noted that there were two possible definitions of "intersection": a line where the two roads meet; or the area of overlap where the two roads meet. It concluded that, in part because of this perceived ambiguity, the CEO's interpretation was correct. On this basis, the court affirmed the CEO's interpretation of "intersection," meaning the line where the two roads met.

■ [¶ 7] The interpretation of a zoning ordinance presents a question of law that we review de novo. *Gensheimer v. Town of Phippsburg*, 2007 ME 85, ¶ 8, 926 A.2d 1168, 1170; *Marton v. Town of Ogunquit*, 2000 ME 166, ¶ 6, 759 A.2d 704, 706. In interpreting a statute or ordinance, a reviewing court " 'look[s] first to the plain meaning of the statutory language to give effect to legislative intent, and if the meaning of the statute is clear on its face, then we need not look beyond

1. It is unclear from the record whether Boyce Road is a minor road or a collector road. The distinction, however, is of no importance in this matter as the road would still not meet

the pertinent standards required of collector roads.

2. Count II, a due process claim, was dismissed and has not been appealed.

the words themselves.'" *State v. One Blue Corvette*, 1999 ME 98, ¶ 7, 732 A.2d 856, 857 (quoting *Cook v. Lisbon Sch. Comm.*, 682 A.2d 672, 676 (Me.1996)). An interpreting court should give terms not otherwise defined "their common and generally accepted meaning unless indicated otherwise by their context in the ordinance." *DeSomma v. Town of Casco*, 2000 ME 113, ¶ 9, 755 A.2d 485, 488.

[¶ 8] An ordinance may not be interpreted in such a way to read a provision out of existence or to render it surplusage. "Rules of statutory construction require zoning ordinances and subdivision standards to be interpreted 'so as [not] to render a provision a surplusage.'" *Bodack v. Town of Ogunquit*, 2006 ME 127, ¶ 12, 909 A.2d 620, 624 (quoting *Kimball v. Land Use Regulation Comm'n*, 2000 ME 20, ¶ 26, 745 A.2d 387, 394) (alteration in original).

[¶ 9] "We interpret [an] ordinance by first looking at the plain meaning of the language to give effect to legislative intent." *Clarke v. Olsten Certified Healthcare Corp.*, 1998 ME 180, 714 A.2d 823, 824. "Undefined terms should be given their common and generally accepted meaning unless the context clearly indicates otherwise." *George D. Ballard, Builder, Inc. v. Westbrook*, 502 A.2d 476, 480 (Me.1985). In construing the language of an ordinance, the ordinance is to be considered as a whole. *Gerald v. York*, 589 A.2d 1272, 1274 (Me.1991). "The terms or expressions in an ordinance are to be construed reasonably with regard to both the objectives sought to be obtained and the general structure of the ordinance as a whole." *Id.*

[¶ 10] Both parties focus their arguments on the meaning of "intersection." The term is not defined in the ordinance and the parties argue for different definitions.[3]

[¶ 11] Notwithstanding the argument of the parties, the outcome of this appeal does not hinge on the meaning of "intersection." Whether the intersection is a line or an area of overlap, Boyce Road must comply with town standards for that length of the access road. "[N]o new access street or road ... shall be permitted ... [where the] existing public street[ ] do[es] not meet current town street design and construction standards *at the intersection*[ ] ...." Eliot, Me., Code § 45–406(c) (June 16, 2007) (emphasis added). Regardless of the meaning of "intersection," Boyce Road does not meet town standards where the access road would meet it.

[¶ 12] Further, Jade Realty's argument, that Boyce Road need not be brought up to town standards at the intersection because the ordinance simply requires that the access road be built to standard, must fail. To accept this argument would read the ordinance out of existence. Under this reading, the ordinance would not require anything not already required by town standards, as the access

---

**3.** Jade Realty points to the definition in the sixth edition of Black's Law Dictionary, arguing that it distinguishes between "X" intersections and "T" intersections. "As applied to a street or highway [the term] means the space occupied by two streets at the point where they cross each other.... 'Intersection' may also apply where street or highway runs into but without crossing another; *e.g.*, a 'T' intersection." BLACK'S LAW DICTIONARY 819 (6th ed. 1990).

This is too slender a basis for its argument to stand. First, the seventh edition does not make this distinction, only stating that it is a "place where two roads meet or form a junction." BLACK'S LAW DICTIONARY 825 (7th ed. 1999). Second, the definition on which Jade Realty places so much weight does not support its contention that the intersection is simply the line where the streets meet: that is not what the definition states.

road must already be built to meet town standards. This is contrary to principles of statutory interpretation as it renders the ordinance surplusage. *Bodack*, 2006 ME 127, ¶ 12, 909 A.2d at 624.

The entry is:

Judgment of the Superior Court is vacated and the decision of the Board of Appeals, dated July 23, 2006, is affirmed.