STATE OF MAINE                                          SUPERIOR COURT
CUMBERLAND, ss                                         CIVIL ACTION
                                                       DOCKET NO. AP-08-035

ALFRED AYDELOTT, ADRIENNE GISKE,
CLAIRE FILLEITTAZ, MONIQUE LEVESQUE,
AND DONNA MARSTON,
                    Petitioners
                                                       ORDER ON
v.                                                     80B APPEAL

CITY OF PORTLAND-
ZONING BOARD OF APPEALS,
PATRICIA ASHTON, AND RICHARD ASHTON,
                    Respondents

Before the Court is Petitioners' M.R. Civ. P. 80B appeal of a decision made by the

City of Portland Zoning Board of Appeals.

## BACKGROUND

Defendants Richard and Patricia Ashton ("Ashtons") own a single-family home

at 38 Torrington Avenue, Peaks Island, Maine (hereinafter "the Property"). The

Property is located in the "IR-2 Island Residential Zone" (hereinafter "IR-2 Zone")

pursuant to the City of Portland Land Use Code of Ordinances (hereinafter

"Ordinance").

The parties agree that the Property is legally nonconforming with respect to

various provisions of the Ordinance. The Ashtons' home is nonconforming with

respect to the front, side, and rear setbacks.[1] Additionally, the home on the Property is

nonconforming with respect to both the maximum lot coverage of twenty percent[2] and

the minimum setback from the normal high water line.[3] Finally, the Property is

---

[1] See Ordinance Section 14-145.11(c) for the minimum yard dimensions. R. at Tab 6:10-12.

[2] See Ordinance Section 14-145.11(d) for the maximum lot coverage. R. at Tab 6:12.

[3] The Petitioners cite Ordinance Section 14-145.11(d) for this proposition, but this provision does not relate to the normal high water line. Rather, Section 14-449 is applicable. Supp. R. at 14-453. This section was not included in the original 80B record. After the hearing held on May 8, 2008, the parties agreed to submit the Ordinance in its entirety. The City submitted the Ordinance on May 11, 2009. It is worthy of mention that an "[a]ppellant has the

nonconforming with respect to the minimum lot size of 20,000 square feet.[4] The Property is 4,568 square feet.

The Ashtons applied for a building permit from the City of Portland on September 15, 2008 to enlarge the second floor of their home. The proposed increase in floor area to the second floor was calculated to be 464.14 square feet, which is 41% of the 1,423 square foot footprint of the first floor.[5] On September 18, 2008, the Director of Building & Inspections Services of the City of Portland signed a building permit for the Ashtons on behalf of Defendant City of Portland ("City").

Petitioners Alfred Aydelott, Adrienne Giske, Claire Filleittaz, Monique Levesque, and Donna Marston ("Petitioners") are abutters to the Property. On October 16, 2008, they appealed the issuance of the permit to the Zoning Board of Appeals ("ZBA"). On November 13, 2008, the ZBA heard Petitioners' appeal and issued its decision in writing dated November 13, 2008 affirming the issuance of the building permit (hereinafter "the Decision"). The City provided a copy of the Decision to counsel for Petitioners by letter dated November 18, 2008. Petitioners initiated this appeal by filing their Complaint on December 17, 2008.

## DISCUSSION

affirmative duty of supplying [the court] with an adequate record upon which consideration can be given to the arguments advanced in support of the appeal." *Summit Realty, Inc. v. Gipe,* 315 A.2d 428, 429 (Me. 1974). If an appellant fails to do so, Maine courts do not take judicial notice of ordinance provisions not included in the record. *See e.g., Mills v. Town of Eliot,* 2008 ME 134, ¶ 23, 955 A.2d 258, 266. An inadequate record may result in the dismissal of an appeal. *See e.g., Gipe,* 315 A.2d at 429-30 (refusing to consider the appellant's argument regarding the validity of the ordinance when he did not include it in the record and when the appellee did not consent to its consideration).

[4] See Ordinance Section 145.11(a)(1) for the minimum lot size. R. at Tab 6:8.

[5] The Petitioners take issue with the City's determination of which level of the home is in fact the "first floor." The Court does not reach this issue. On remand, the ZBA should clarify the ambiguity in its prior written decision. In response to the issue of whether the incorrect area of the second floor was used in calculating the allowable expansion, the ZBA stated that "no evidence that [the] calculation was incorrect" was presented to the ZBA. R. at Tab 7:4. It is unclear as to whether this statement reflects that there was no evidence presented regarding a mathematical error or whether this statement means that no evidence was presented regarding the choice of which floor is the "first floor" for purposes of determining the percentage of allowable expansion. If the latter is the case, the record quite clearly shows just the opposite. Petitioners unequivocally presented evidence to the ZBA regarding the determination of the "first floor." R. at Tab 9:16-12.

2

## I. Standard of Review

The operative decision for judicial review is the decision of the ZBA, rather than the decision of the building authority. *See Stewart v. Town of Sedgwick*, 2000 ME 157, ¶¶ 4-5, 757 A.2d 773, 775. In appeals brought pursuant to M.R. Civ. P. 80B, this Court reviews an administrative decision for errors of law, abuse of discretion or findings of fact unsupported by the record. *Yates v. Town of Southwest Harbor*, 2001 ME 2, ¶ 10, 763 A.2d 1168. The Court has jurisdiction over this matter pursuant to 30-A M.R.S. 2691(3)(G) (2008).

Questions of law, which include determinations of the meaning of ordinances, are reviewed *de novo. Jade Realty Corp. v. Town of Eliot*, 2008 ME 80, ¶ 7, 946 A.2d 408, 410. As for questions of fact, the Court employs the "substantial evidence" standard, which is the same as the "clear error" standard used by the Law Court to review fact-finding by a trial judge. *Gulick v. Bd. of Envtl. Protection*, 452 A.2d 1202, 1207-08 (Me. 1982). Under this standard, the issue before the reviewing court "is not whether it would have reached the same conclusion as the [administrative tribunal], but whether the record contains competent and substantial evidence that supports the result reached." *Seider v. Bd. of Exam'rs of Psychologists*, 2000 ME 206, ¶ 8, 762 A.2d 551, 555 (internal quotation omitted). "Substantial evidence is evidence that a reasonable mind would accept as sufficient to support a conclusion." *York v. Town of Ogunquit*, 2001 ME 53, ¶ 6, 769 A.2d 172, 175.

The burden of persuasion in an action challenging an administrative decision rests on the party seeking to overturn its decision. *See Sawyer Envtl. Recovery Facilities, Inc. v. Town of Hampden*, 2000 ME 179, ¶ 13, 760 A.2d 257, 260. Thus, in this case, the Petitioners bear this burden.

Petitioners make three arguments in their 80B brief. The first involves a question of law regarding the meaning of an Ordinance provision implicated in the Ashtons' building permit. The two other arguments are mixed questions in that they involve issues surrounding the ZBA's application of this Ordinance provision to the facts in the record.

## II. Meaning of the Ordinance

At the heart of Petitioners' first argument is the meaning of Ordinance Section 14-436, entitled "Building Extensions." Specifically, the parties dispute the meaning of the phrase "land area per dwelling unit" in the context of the IR-2 Zone on Peaks Island. This phrase is not defined in the Ordinance. Section 14-436 applies in most, if not all, zones throughout the City of Portland.[6] It provides the limits for building extensions as follows:

**Sec. 14-436. Building extensions.**

> Existing non-residential and residential principal structures which are nonconforming as to any area and/or yard requirements may be enlarged within the existing footprint subject to the following provisions:
>
> (a) *For principal structures lawfully nonconforming as to land area per dwelling unit as of July 19, 1988:* The floor area of the expansion shall be limited to no more than fifty (50) percent of the first floor footprint. The additional floor area shall be created in the uppermost floor by the use of dormers, turrets or similar structures needed to provide the minimum height required for habitable space while preserving the existing roof configuration to the maximum extent possible.
>
> (b) *For residential principal structures conforming as to land area per dwelling unit as of July 19, 1988, but lawfully nonconforming as to any yard setback or nonresidential principal structures that are lawfully*

---

[6] See the "dimensional requirements" section for the following zones: R-1, R-2, R-3, R-4, R-5, R-5A, R-6, IR-1, IR-2, IR-3, Island Transfer Station Overlay Zone, B-1, B-1b, B-2, B-2b, A-B, B-3, B-3b, B-3c, I-B, B-4, B-5, O-P, B-6, B-7, Eastern Waterfront Port Zone, Waterfront Central Zone, and Waterfront Port Development Zone.

> *nonconforming as to any yard setback:* The floor area of
> the expansion shall be limited to no more than eighty
> (80) percent of the first floor footprint. The
> additional floor area shall be created by raising the
> existing roof configuration the minimum amount required
> to create an additional story of habitable space, or by
> the use of dormers, turrets or similar structures.

Building expansions under this section may occur only once during the lifetime of an existing structure.

R. at Tab 6:4 (emphasis added).

Stated differently, the limits for expansion, and the means of expansion, depend on whether the structure is "lawfully nonconforming as to land area per dwelling unit." *Id.* If it is "lawfully nonconforming as to land area per dwelling unit" then the expansion can only be 50% of the first floor footprint and the expansion also must use dormers, turrets or similar structures to achieve the desired results. *Id.* If, however, the structure is "conforming as to land area per dwelling unit" then the expansion can be as much as 80% of the first floor footprint and the expansion may either raise the roof configuration or use dormers and the like to achieve the desired results. *Id.*

In the Decision, the ZBA stated that "[m]inimum land area per dwelling unit is a term of art w/ [sic] a separate meaning from minimum lot size; omission of min. [sic] land per dwelling unit in island zone was intentional." R. at Tab 7:4. The Petitioners argue that common sense compels the conclusion that "land area per dwelling unit" can only mean "minimum lot size" in the context of a zone where only single-family homes are permitted. In other words, in the context of a single dwelling unit (as is the case here) the minimum lot size and the minimum land area per dwelling unit are always exactly the same. To say otherwise, argue the Petitioners, "defies logic and ignores the generally accepted meanings of those words." Pets' Br. at 6. In opposition, the Ashtons and the City contend that these two phrases are not synonymous. In

5

support of this contention, the Ashtons refer the Court to different provisions throughout the Ordinance in which there is not only a minimum lot size but also a specified "lot area per dwelling unit" or a "area per dwelling unit" in other residential zones in the City. From this, argue the Ashtons, it was clearly the intent of the City to make these density specifications. The absence of such specifications in the IR-2 Zone implies that there are no such specifications within that zone. Picking up on this argument, the City argues that without any such mandate it was reasonable for the ZBA to conclude that the Property was lawfully conforming as to land area per dwelling unit. Having reached this conclusion, it was then reasonable for the ZBA to apply Subsection (b) of Section 14-436, which deals only with situations where the structure is nonconforming as to yard setbacks.

At first glance, the City's argument makes sense. However, the argument falls apart when one looks at the language cited in support of this argument and finds no exact match of the phrasing used in Section 14-436. In other words, the City finds it preposterous to equate minimum lot size with "land area per dwelling unit" yet appears to have no issue with equating "land area per dwelling unit" with either "lot area per dwelling unit" or "area per dwelling unit." Also, the City argues that "[t]o do otherwise, and apply Section 14-436(a) would be to find the Ashtons' property nonconforming as to a requirement that does not exist." City's Br. at 4. What the City fails to recognize is that the inverse of this is likewise true. In applying Subsection (b), the ZBA implicitly held that the Ashtons' property was conforming to a requirement that allegedly does not exist.

In interpreting Section 14-436, the Court must "look first to the plain meaning of the statutory language to give effect to legislative intent, and if the meaning of the statute is clear on its face, then [it] need not look beyond the words themselves." *State*

6

*v. One Blue Corvette*, 1999 ME 98, ¶ 7, 732 A.2d 856, 857. Undefined terms are given "their common and generally accepted meaning unless indicated otherwise by their context in the ordinance." *Jade Realty Corp.*, 2008 ME 80, ¶ 7, 946 A.2d at 411 (internal quotation omitted). In doing so, "[t]he terms or expressions in an ordinance are to be construed reasonably with regard to both the objectives sought to be obtained and the general structure of the ordinance as a whole." *Id.* ¶ 9, 946 A.2d at 411.

Although the phrase "land area per dwelling unit" is not defined in the Ordinance, the term "dwelling unit" is defined as "[o]ne (1) or more rooms with private bath and kitchen facilities comprising an independent self-contained dwelling unit." Supp. R. at 14-17. "Land area" is not defined. However, its definition can be gleaned from the definitions of other similar phrases used throughout the Ordinance and from the common and generally accepted use of this phrase. For example, "Lot area" is defined as "[t]he area of land enclosed within the boundary lines of a lot." Supp. R. at 14-22. The term "Gross area" is defined as "[s]quare footage of land area. . . ." Supp. R. at 14-18. And, finally, "Net land area" is also defined. Supp. R. at 14-25. It provides a calculation whereby other measurements are subtracted from the gross area. *Id.* More generally, "area" is defined as "[t]he measure of a planar region or of the surface of a solid." *Webster's II New College Dictionary* 59 (2001). Similar to the zones listed in note 6 *supra*, Division 7.2, entitled "IR-2 Island Residential Zone,"[7] expressly subjects the IR-2 Zone to the provisions of Division 25, entitled "Space and Bulk Regulations and Exceptions." Division 25 includes Section 14-436.

In interpreting the Ordinance as a whole, as the Court must, "land area per dwelling unit" is, quite obviously, a dimensional and density requirement. It could simply be defined as the minimum square footage of land necessary for a dwelling unit.

---

[7] This division provides the zoning details for the IR-2 Zone.

7

Appling this definition to the IR-2 Zone, one can only conclude that the minimum square footage of land necessary for a dwelling unit is 20,000 square feet. In other words, the "land area per dwelling unit" is the same for a single-family residence in the IR-2 Zone as is the "minimum lot size" of 20,000 square feet.

The Ashtons' lot is 4,568 square feet. All parties agree that the Ashtons' lot is nonconforming as to the minimum lot size. Since the Ashtons' Property is necessarily nonconforming as to "land area per dwelling unit," as defined herein, the ZBA erred in implicitly holding otherwise in its application of Subsection (b) of Section 14-436, rather than Subsection (a) of Section 14-436.

Accordingly, the Court vacates the Decision of the ZBA affirming the issuance of the Ashtons' building permit and remands the matter to the ZBA for further fact-finding pursuant to Ordinance Section 14-436(a) and in conformity with this opinion. The Court retains jurisdiction over this matter until a final judgment is entered. *See Doggett v. Town of Gouldsboro*, 2002 ME 175, ¶¶ 7-8, 812 A.2d 256, 258-59 (discussing the procedure for rendering a final judgment subject to appeal to the Law Court); *Tarbuck v. Jaeckel*, 2000 ME 105, ¶¶ 23-24, 752 A.2d 176, 182-83 (discussing when the Superior Court "implicitly retains jurisdiction" after remand); *see also* M.R. Civ. P. 80B(m).

Therefore, the entry is:

> The Decision of the City of Portland Zoning Board of Appeals is VACATED.
>
> The case is REMANDED to the City of Portland Zoning Board of Appeals for further proceedings consistent with this opinion.
>
> The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated at Portland, Maine this ___21ˢᵗ___ day of ___May___, 2009.

Robert E. Crowley
Justice, Superior Court

9

Date Filed _12-15-08_    _CUMBERLAND_    Docket No. _AP-08-35_

County

Action _80B APPEAL_

ALFRED L. AYDELOTT                    ZONING BOARD OF APPEALS, CITY OF PORTLANI
ADRIENNE GISKE                        PATRICIA ASHTON
CLAIRE FILLEITTAZ                     RICHARD ASHTON
MONIQUE LEVESQUE
DONNA MARSTON

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| JONATHAN L. GOLDBERG, ESQ<br>MITTELASEN, LLC<br>PO BOX 427<br>PORTLAND, ME 04112-0427 | MARY COSTIGAN ESQ (CITY OF PORTLAND)<br>389 CONGRESS ST.<br>PORTLAND, ME 04101<br>874-8480<br><br>DANIEL CUMMINGS, ESQ. (ASHTONS)<br>NORMAN HANSON & DETROY<br>PO BOX 4600<br>PORTLAND ME 04112-4600<br>774-7000 |

Date of
Entry

2008