STATE OF MAINE
CUMBERLAND, SS.

SUPERIOR COURT
LOCATION: Portland
Docket No. AP-14-45

STATE OF MAINE
Cumberland. ss. Clerk's Office

AUG 07 2015

RECEIVED

HEATH BELL and URSULA
SOOBITSKY,

Appellant,

v.

TOWN OF GRAY and the TOWN OF
GRAY ZONING BOARD OF APPEALS,

Appellee.

)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER ON APPELLANTS' M.R. CIV.
P. 80B APPEAL**

STATE OF MAINE
Cumberland, ss, Clerk's Office

AUG 07 2015

RECEIVED

Before the Court is the M.R. Civ. P. 80B appeal of Appellants Heath Bell and Ursula

Soobitsky challenging a July 23, 2014 decision of the Zoning Board of Appeals (the "Board") of

the Town of Gray. Appellants contend that the Board erred in finding the business activities at

their home constituted an "additional principal use," rather than a "home occupation."[1] The

Board and the Town of Gray have filed a Counterclaim alleging that the Appellants violated a

Town of Gray Zoning Ordinance. For the reasons discussed below, the Court affirms the

decision of the Board.

## I. FACTUAL BACKGROUND

The Appellants in this case hold an equitable interest in and reside at 270 Mayall Road in

Gray, Maine (the "Property").[2] This area of Gray is zoned as a Rural, Residential and

Agricultural ("RRA") district. (R. 13.) The Property consists of one structure, which the

Appellants use as their primary dwelling. (*Id.*) The first floor of said structure consists of a

---

[1] Appellants further seek a declaratory judgment that the applicable ordinance does not prevent them from
parking commercial vehicles overnight at their home or taking a vehicle home for routine maintenance in
Appellants' garage.

[2] Appellants lease-to-own the property from Nicholas Burke. (R. 8, 11.)

built-in two-bay garage, which includes a mezzanine that is used as an office. (*Id.*) The second level of the house is a duplex designed for two-family use, but it is currently occupied solely by the Appellants' family. (*Id.*)

The Appellants own a business called "P & B paving, Inc." (*Id.*) In the past, Appellants have undertaken their bookkeeping and paperwork in the mezzanine office in the garage portion of the house. They have also parked some of their commercial trucks, including dump trucks at the Property,[3] and on occasion have used the garage to conduct repairs on their trucks. (*See* R. 13, 14, 25-26); (R. 14, 29-30.) There have been occasions where up to six commercial vehicles have been stored on the property. (R. 25-26.) At least one abutting neighbor has complained about the early morning noise and odors from the use and operation of the vehicles on the Property. (R. 35-38.) Appellants contend that they no longer store vehicles on the Property, but they hope to continue using the garage for routine maintenance of the trucks.[4] (Br. of Appellants 3.)

In January 2010, Appellants received a conditional use permit from the Town to operate a snowmobile repair business at the Property.[5] (R. 10.) The Town's Decision described the snowmobile repair shop as an "accessory use," secondary to the principal use of the property as a single-family residence. (R. 5.) Appellants contend that they should be able to substitute the use of the garage previously approved by the Town for the snowmobile business for the use of the garage for P & B Paving. (R. 8.) The snowmobile repair business, however, is no longer in

---

[3] Appellants contend that this activity is no different than the trucks that frequently use the sand pits on Mayall Road. (Br. of Appellants 3) (citing R. 14, 24.)

[4] The Appellants contend that the repairs conducted in the garage on the Property are not part of any retail business – they are simply repairs made to P&B vehicles. (Br. of Appellants 3) (citing R. 14.)

[5] The permit approved use of the Property for snowmobile repair, retail sales of parts and apparel, trailer storage parking, and granted permission for the Appellants to have lit signs. (R. 5, 6, 10, 13.) The operating hours of the business were 9:00 AM – 6:00 PM on Mondays through Fridays and 5:00 AM – 12:00 PM on Saturdays. (*Id.*)

2

existence, and in his March 27, 2014, letter the CEO stated that the conditional use approval had lapsed. (R. 10.)

On October 17, 2013, the Code Enforcement Officer for the Town of Gray issued a Notice of Violation ("NOV") informing the owner of the Property, Nicholas Burke, that the Property could not be used for any activities associated with Appellants' paving business, including the parking/storage of vehicles. (R. 3.) The Notice mentioned that paving would fall under construction services, which would not be a permitted use in the RRA district. (*Id.*) The CEO repeatedly contacted Mr. Burke and the attorney for the Appellants following the Notice.[6] On March 27, 2014, the CEO sent a letter ordering the Appellants to cease their activities at the Property involving the repair of large commercial vehicles and the storage thereof. (R. 10.) The Appellants appealed this Decision to the Board. (R. 12-16.)[7]

On July 23, 2014, the Board heard the Appellants' Appeal of the CEO's decision. (*See* R. 19-59.) Mr. Bell testified that six dump trucks were stored at the property over the winter. (*See* R. 25-26.) The Appellants represented that when vehicles are parked at the property they are parked out of view of the main road. (R. 24, 25-26.) They stated in their letter that during the regular business season, the dump trucks and large equipment would be parked elsewhere, and that repairs on trucks or equipment would average no more than twice per week from the spring to the fall. (R. 8.) They also argued that all activity related to the trucks took place at normal business hours. (R. 14.) The office would be used approximately two mornings per week, but no customers would visit the garage or office. (*Id.*) Appellants argued that their use

---

[6] Letters from the CEO, the Appellants' attorney, and the Appellants are included in the Record. (*See* R. 4-11.)

[7] In their application material to the Board, the Appellants indicated that they were under the impression that no action would be taken against them because: (i) P&B Paving vehicles at the Property were going to be moved when the snow melted; and (ii) they has been working with the CEO to resolve all issues. (Br. of Appellants 4.)

3

of the property for the paving business was actually less disruptive than the approved use of the property for the snowmobile repair business. (R. 13.) The Appellants also pointed out that because the neighborhood is close to a gravel pit and commercial vehicles travel through the area daily, the paving business is comparatively not noticeable. (R. 13-14.)

At the hearing, Elizabeth Lynch, residing at 274 Mayall Road adjacent to the Appellants, testified in support of the CEO Decision and in opposition to allowing the Appellants to use their property for their paving business. (R. 35-39.) She also submitted a letter to the Board through counsel. (R. 17-18.) She disputed the Appellants' statements regarding the frequency with which they park vehicles at the property. (*Id.*) The Appellants contend that they park vehicles there less than two times a week, and that over a month can go by without vehicles, whereas Ms. Lynch contends that vehicles were parked and operated at the property at 4:30 or 5:00 A.M. five to six days per week. (R. 2.) Ms. Lynch and her counsel reported a so-called cacophony of unpleasant noises at that early hour: multiple trucks and heavy equipment running, back-up alarms going off, noise elicited from raising the back of dump trucks and welding operations. (R. 32-33.) She also complained of objectionable fumes from the trucks and equipment wafting over to her property. (R. 33.) She stated that she raised her concerns with the Appellants but the Appellants did not change their behavior. (R. 35-36.) She did not have a problem with the snowmobile business because of certain constraints upon that business, and she would be fine with the Appellants seeking a conditionally permitted use of the Property as a headquarters for a contracting business as long as it was subject to certain conditions. (R. 32-36.)

At the hearing the Appellants noted that they were in the process of purchasing another piece of land where they intend to keep all of their P & B Paving vehicles and equipment. (R. 45-46.) It was also noted at the hearing that the lot size was insufficient for a second principal

4

use. (R. 41-42.) On July 30, 2014, the Board issued its Decision denying the Appellant's request to allow the storage and repair of commercial vehicles associated with P & B paving on the Property. (R. 1-2.) The Board stated that it came to the following conclusions:

1. The paving business does not meet the criteria of a Home Occupation, specifically character of use inconsistent with a residential neighborhood, more than two commercial vehicles stored outside, nuisance issues from early noise and fumes and too many non-resident employees.

2. The size of the trucks constitutes a commercial use with construction services.

3. A commercial use is not allowed in this district. However, even if the use were allowed, the applicant does not have enough lot acreage to allow for two principal uses; one being the single-family residence and the other commercial paving business.

(R. 2.)

## II. STANDARD OF REVIEW

In appeals brought pursuant to M.R. Civ. P. 80B, this Court reviews an administrative decision for errors of law, abuse of discretion or findings of fact unsupported by the record. *Yates v. Town of Southwest Harbor,* 2001 ME 2, ¶ 10, 763 A.2d 1168.

Questions of law, which includes determinations of the meaning of ordinances, are reviewed *de novo. Jade Realty Corp. v. Town of Eliot,* 2008 ME 80, ¶ 7, 946 A.2d 408. As for questions of fact, the Court employs the "substantial evidence" standard, which is the same as the "clear error" standard used by the Law Court to review fact-finding by a trial judge. *Gulick v. Bd. of Envtl. Protection,* 452 A.2d 1202, 1207-08 (Me. 1982). Under this standard, the issue before the reviewing court "is not whether it would have reached the same conclusion as the [administrative tribunal], 'but whether the record contains competent and substantial evidence that supports the result reached.'" *Seider v. Bd. of Exam'rs of Psychologists,* 2000 ME 206, ¶ 8, 762 A.2d 551 (quoting *CWCO, Inc. v. Superintendent of Ins.,* 1997 ME 226, ¶ 6, 703 A.2d

5

1258). "Substantial evidence is evidence that a reasonable mind would accept as sufficient to support a conclusion." *York v. Town of Ogunquit*, 2001 ME 53, ¶ 6, 769 A.2d 172.

The burden of persuasion in an action challenging an administrative decision rests on the party seeking to overturn its decision. *See Sawyer Envtl. Recovery Facilities, Inc. v. Town of Hampden*, 2000 ME 179, ¶ 13, 760 A.2d 257, 260.

## III. DISCUSSION

The Appellants argue that the Board's decision to affirm the notice of violation was grounded on errors of law and not supported by the record. More specifically, the Appellants believe that the Board was incorrect on two grounds: 1) when it determined that the business activities taking place at the Appellant's residence constituted an "additional principal use" rather than a home occupation, and 2) when it determined that Appellants could not park commercial vehicles overnight at their home, and could not take a vehicle to their home for routine maintenance in their garage. The Court considers each ground below.

### 1. The Board Correctly Determined that Appellants' Use of the Property Was Not a Home Occupation

The Appellants contend the Board's decision was an arbitrary, capricious, and unconstitutionally vague application of the Town's ordinance as the Appellants use of the property is permissible as a "home occupation." However, the Board, in its Decision, determined that the Appellants use constitutes an impermissible commercial use and a second "principal use" under the Ordinance. (R. 2.)

The Town's Zoning Ordinance provides that a "home occupation" is a permitted use in the RRA District. (R. 86.) The Ordinance indicates that the "purpose of [the] Ordinance is to produce liberal, flexible standards for the establishment and maintenance of home occupations, while simultaneously providing the town with a mechanism in which to monitor and regulate

6

their use." (R. 96) (quoting Town of Gray, Me., Zoning Ordinance § 402.7.2.) Under the applicable Ordinance a "home occupation" is "an occupation or business activity, which results in a product or service and is conducted in whole or in part in the dwelling unit or accessory structure." (R. 71) (quoting Town of Gray, Me., Zoning Ordinance § 402.2.2.) A use qualifies as a "home occupation" if the following criteria are met:

1. The home occupation shall be carried on primarily within the principal structure or accessory structures;

2. The home occupation shall be carried on by a member or members of the family residing in the dwelling unit. One employee, who is not part of the family residing in the dwelling unit shall be permitted;

3. The home occupation is clearly incidental and secondary to the use of the dwelling unit for residential purposes.

4. There shall be no exterior storage of materials and no other exterior indication of the home occupation or variation from the residential character of the principal building, except such signs as are permitted.

5. There shall be no more than two (2) commercial vehicles kept outside the garage overnight.

6. Objectionable conditions such as noise, vibration, smoke, dust, electrical disturbance, hazardous materials, odors, heat, or glare shall not be generated.

7. Hours of operation shall be reasonable and normal for residential areas.

8. No traffic shall be generated by such home occupation in greater volumes than would normally be expected in the neighborhood.

. . .

10. No more than fifty (50%) percent of the floor area of a residence and an accessory building shall be used for a home occupation.

. . .

12. Retail businesses such as restaurants, new or used car sales, auto repair garages, auto body shops, and auto service stations shall not be considered home occupations.

(R. 96-97) (quoting Town of Gray, Me., Zoning Ordinance § 402.7.2.)

7

The Appellants argue that they meet the requirements for a home occupation. While acknowledging that the Town of Gray wants to encourage home occupations, the Appellants use of their property for storage and repairs on commercial vehicles, expressly violates multiple home occupation requirements. In particular, Requirements 1,[8] 4,[9] 5,[10] 6,[11] and 7[12] appear to be violated by the Appellants use of the Property.

The Court finds that there is substantial evidence in the record to support the Board's finding that the Appellant's use of the property did not qualify as a home occupation. Ms. Lynch's testimony in particular regarding the disruptiveness of the Appellant's business: the noise, fumes, early hours, and additional employees with trucks present at the Property is especially compelling. As is the Appellant's own testimony that they had six (6) dump trucks parked at their property over the winter. Simply because the Town previously approved another potentially disruptive use of the Property, does not mean that the Appellant's use of the property for its paving business is acceptable. While the small engine repair approved was considered an accessory use, it was within the Board's discretion to determine that the current use of storage and maintenance of large construction vehicles exceeds the former accessory use. Simply because the Appellants qualified for a conditional use permit under certain circumstances will

---

[8] By its very nature, a paving business is operated outside and off the premises of the business. Appellants claim that the activity located on the property is limited to bringing "a couple of vehicles to the Property, on limited occasions . . . so Mr. Bell can perform limited maintenance, such as an oil change in his garage." (Supp. Br. of Appellants 8.) The Board found, however, based in part on Ms. Lynch's testimony, that this is not the extent of the business of P&B Paving. (*See* R. 2, 32-36.)

[9] Appellants have indicated that at least on occasion, dump trucks and other vehicles have been stored or parked on the Property. (*See* R. 13-14, 25-26, 29-30.) Under the terms of the Ordinance there shall be no exterior indication of the home occupation or variation from residential character of the principal building. (R. 96.)

[10] There is testimony in the record indicating that more than two commercial vehicles have been stored or parked on the property for extended periods of time. (R. 25-26.)

[11] There is testimony in the record indicating that the Appellants' use of the Property has resulted in noise, odor, and other objectionable conditions. (R. 32-36.)

[12] There is testimony in the record indicating that the hours Appellants operate the commercial vehicles is unreasonable for a residential area. (R. 32-36.)

8

not have a preclusive effect on the review by the Board under a different set of standard, even if the standards were similar in substance. *See Larrivee v. Timmons*, 549 A.2d 744, 747 (Me. 1988). In this case the conditional use permit was granted under the conditional use section of the Ordinance and has no bearing on how the Board applies the home occupation standard. Nor does the fact that there is a gravel pit in the neighborhood mean that the Town intended that the entire area allow for construction activity—the zoning status of the area would indicate the opposite. Accordingly, the Board did not err in determining that Appellants' use of the Property was not a Home Occupation.

### 2. The Town Did Not Err in Concluding that the Appellants' Use of the Property Constitutes a Second Principal Use

Appellants also contend that the Board's finding that the P&B activities were a second principal use is arbitrary and capricious because the Board did not define how it came to this conclusion. The Court finds that there is substantial evidence in the record to support the Board's conclusion that the Appellants' business-related activities on the Property constitute a second principal use. Under the Ordinance a "principal use" is defined as: "The primary use to which the premises are devoted, and the main purposes for which the premises exist . . ." (R. 16.) In this case, the Board determined that the principal use of the Property was residential and the second principal use was for the commercial operation of the paving company. Under the Rule 80B standard, the issue before the reviewing court "is not whether it would have reached the same conclusion as the [administrative tribunal], 'but whether the record contains competent and substantial evidence that supports the result reached.'" *Seider v. Bd. of Exam'rs of Psychologists*, 2000 ME 206, ¶ 8, 762 A.2d 551, 555 (quoting *CWCO, Inc. v. Superintendent of Ins.*, 1997 ME 226, ¶ 6, 703 A.2d 1258, 1261). It was up to the Board to weigh the testimony of Ms. Lynch to determine her credibility and the impact her testimony would have. In this case,

9

the Board relied heavily on Ms. Lynch's testimony as to the intensity of the Appellants' use of the Property for paving-related purposes and cannot be said to have erred in doing so.[13]

### 3. The Board Did Not Err in Concluding that the Appellants' Use of the Property Constituted a Commercial Use

The Appellants contend that the Board's decision was an overbroad application of the Zoning Ordinance and that the notice of Decision fails to provide guidance regarding what is prohibited under the Ordinance. More specifically, the Appellants contend that there is no factual or legal basis for the Board's determination that the "size" of trucks necessarily constitutes prohibited commercial activity. The Board concluded that the size of the truck constitutes construction services and any commercial activity is prohibited in the RRA district. (R. 2.) The Board did not clarify what size vehicles constitute commercial activity. Further, Appellants argue that the Board's conclusion that all commercial activity is prohibited in the RRA zoning district is contradicted by the home occupation provision of the Ordinance.

However, "[a] municipal determination as to how to characterize a use "will only be overturned if it is not adequately supported by evidence in the record." *Jordan*, 2003 ME 82, ¶ 8, 828 A.2d 768. Indeed, a Board's conclusion as to whether a particular proposed use falls within a definition will be accorded "substantial deference." *Rudolph v. Golick*, 2010 ME 106, ¶ 8, 8 A.3d 684 (affirming Board's factual finding that proposed horse barn and riding area met the definition of "animal husbandry") (citation omitted). In this case, the record indicates that the trucks stored on the Property were large commercial dump trucks used in the course of the Appellants' paving business. (R. 25-26.) Based on this evidence, the CEO reasonably determined that the use and

---

[13] Appellants have not challenged the finding that the 2.05-acre property does not have sufficient area to allow for a second principal use.

10

maintenance of the dump trucks constituted the furnishing of "construction services," which is a commercial use. Commercial uses are prohibited from the RRA zoning district. Accordingly, the Board did not err in concluding that Appellants' use of the Property constituted a commercial use.

## IV. CONCLUSION

Based on the foregoing, the entry shall be:

> Appellants' Appeal pursuant to M.R. Civ. P. 80B is **DENIED**. The Court affirms the decision of the Zoning Board of Appeals of the Town of Gray.

Pursuant to M.R. Civ. P. 79(a), the Clerk is herby directed to incorporate the Order by reference in the docket.

Dated: August 2, 2015

Roland A. Cole, Justice
Maine Superior Court

11

Date Filed: 9-5-14          CUMBERLAND          Docket No. AP-14-45
                              COUNTY

Action: 80B APPEAL


HEATH BELL                              TOWN OF GRAY
URSULA SOOBITSKY                        TOWN OF GRAY ZONING BOARD
                                        OF APPEALS
                         vs.

---

Plaintiff's Attorney                              Defendant's Attorney

THEODORE SMALL ESQ                      WILLIAM DALE ESQ.
PO BOX 891                              PO BOX 4510
LEWISTON ME 04240                       PORTLAND ME 04112