NOTICE:  All slip opinions and orders are subject to formal revision
and are superseded by the advance sheets and bound volumes of the
Official Reports.  If you find a typographical error or other formal
error, please notify the Reporter of Decisions, Supreme Judicial
Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston,
MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11594


M. DAVID COHEN  vs.  SHELLEY COHEN.



       Middlesex.      October 9, 2014. - February 23, 2015.

   Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
                          Hines, JJ.


Uniform Interstate Family Support Act.  Contempt.  Divorce and
     Separation, Foreign judgment, Child support, Attorney's fees.
     Probate Court, Jurisdiction.  Jurisdiction, Child support,
     Probate Court.  Parent and Child, Child support.



     Registration for enforcement of a foreign order of support filed
in the Middlesex Division of the Probate and Family Court Department
on March 31, 2004.

     A complaint for contempt was heard by Randy J. Kaplan, J.

     After review by the Appeals Court, the Supreme Judicial Court
granted leave to obtain further appellate review.

     Anna S. Richardson for the father.


     DUFFLY, J.  This case requires that we resolve the extent to

which the Probate and Family Court has subject matter jurisdiction

to enforce or modify a support order issued by a California court

in connection with proceedings dissolving the marriage of M. David

Cohen (father) and Shelley Cohen (mother).  After the parties separated in 1999, a Los Angeles County Superior Court entered a judgment establishing monthly child and spousal support payments payable by the father to the mother.  The father moved to Massachusetts in 2002.  In 2004, the California support order was registered in the Probate and Family Court, upon request of the Los Angeles County Department of Child Services (California CSSD).  Pursuant to the Uniform Interstate Family Support Act (UIFSA), which has been adopted by both California and Massachusetts, Massachusetts courts thus acquired jurisdiction to enforce the support order.  See Cal. Fam. Code, §§ 4900, 4950, 4951 (West 2013); G. L. c. 209D, §§ 6-601, 6-602.  The child support division of the Massachusetts Department of Revenue (DOR), acting on behalf of the mother, initiated contempt proceedings against the father in the Probate and Family Court, and a Probate and Family Court judge subsequently issued multiple orders that sought to enforce the California support order.  The orders incorporated the parties' stipulated agreements, which, inter alia, obligated the father to pay the child's uninsured medical expenses and to contribute to her college education costs; neither of these items had been included in the order of the California court.  In 2010, a Probate and Family Court judge found the father in contempt for having failed to make payments in the amounts agreed toward support arrears, to pay the agreed share of

the child's college costs and her uninsured medical expenses, and to pay previously-awarded attorney's fees and costs incurred by the mother in seeking enforcement.  The father challenges the jurisdiction of the court to enter this judgment.

We conclude that, in the circumstances of this case, the jurisdiction of the Probate and Family Court was limited to enforcement of the California support order, and that the parties' stipulated agreements did not extend the jurisdiction of the Probate and Family Court to modify the California support order.  To the extent the Probate and Family Court orders modify the California support order, they are therefore void, and the court accordingly had no authority to enforce these orders or to find the father in contempt for failing to comply with them.  The Probate and Family Court nonetheless retained jurisdiction to continue to enforce the California child support and spousal support order, at least until the father returned to live in California and California resumed enforcement.  The Probate and Family Court judge therefore had authority to hold the father in contempt for failing to comply with orders that he pay the mother's attorney's fees and costs incurred in connection with enforcement of the California order.

Background and prior proceedings.  1.  California proceedings.  The father and the mother lived in Los Angeles with their daughter.  After a lengthy marriage, the parties separated in

1999, and a Los Angeles County Superior Court ordered the father to pay the mother monthly payments for child and spousal support.[1]   The father relocated to the Boston area in January, 2002, while the mother and child remained in California.  Arrearages accumulated, and, in February, 2003, the California CSSD transmitted to the child support enforcement division of the DOR the first of two requests for registration of the California support order.  This transmittal sought enforcement in Massachusetts through income withholding, pursuant to G. L. c. 209D, § 6-602 (a).[2]   In June, 2003, a "judgment of dissolution of marriage" entered in the Los Angeles County Superior Court that increased the father's monthly child support obligation to $1,035, and his spousal support to $600; the judgment also reserved jurisdiction over arrearages.

In March, 2004, on request of the California CSSD, the 2003 California support order was registered in the Probate and Family Court, giving the Massachusetts court authority to enforce the

---

[1] The order obligated David Cohen (father) to pay monthly to Shelley Cohen (mother) $178 in child support, $280 for the child's special education therapy, and $477 in spousal support.

[2] The record does not indicate whether the father's wages were attached.  The record on appeal includes a copy of an "audit" created by the Los Angeles County Department of Child Services (California CSSD), setting forth the monthly support obligation and the amounts paid toward that obligation.  This document reflects that no payments for child support or spousal support were made for the period from February, 2001, through July, 2004, and that payments were made only sporadically prior to and after that period.

California support order. See G. L. c. 209D, §§ 6-601 to 6-603. The child support enforcement transmittal document stated that registration was "for enforcement only" and for "collection of arrears."

2. Massachusetts proceedings. On March 31, 2004, the DOR initiated contempt proceedings on behalf of the mother against the father in the Probate and Family Court. Each represented by counsel, the parties reached an agreement and, in June, 2005, a Probate and Family Court judge issued a stipulated order reflecting that agreement. The stipulated order required the father to make a lump sum payment and further weekly payments to reduce all spousal and child support arrears; to pay one-third of the child's college costs; and to pay the mother's attorney's fees.[3] The stipulation included the father's "acknowledge[ment] that he is earning less than he is capable [of] and will forthwith commence a job search to obtain employment commensurate with his education and experience."

In October, 2006, the mother filed another complaint for contempt.[4] In December, 2006, the father was found in contempt for,

---

[3] The record does not indicate the method used to determine the amount in arrears, but the amount appears to include arrears accumulated after the father relocated to Massachusetts.

[4] According to the Probate and Family Court docket sheet, the mother also had filed a complaint for contempt in September, 2005; the parties entered into stipulations on that complaint in November and December, 2005; and a judgment of contempt entered in April, 2006.

among other things, his failure to pay his agreed contribution to the child's college expenses and uninsured medical expenses.[5] Another order issued in May, 2007, incorporating a four-page written stipulation of the parties. In that stipulation, the father agreed that he was guilty of contempt for having failed to pay "child support." The order required, among other things, that the father "continue to pay $150 per week toward the child support arrears," and that he reimburse the mother for attorney's fees and costs, "including travel incurred as a result of the hearing" that day.[6] The written stipulation provided that the father would "focus his efforts on his new employment," and resign from involvement in all but one specific nonprofit organization.

In February, 2009, the DOR informed the father that the

---

Copies of these documents are not included in the record submitted by the father, and the mother neither submitted a brief nor appeared at argument before us. The Probate and Family Court judge's decisions, however, provide detail concerning the facts at issue, including the judge's findings on the amounts of arrears and the father's ability to make the stipulated payments to reduce those arrears.

[5] The December, 2006, order finds the father in contempt for having failed to pay $26,230 for the child's medical expenses incurred in 2006. While the record does not include an order requiring the father to pay health care costs, in a memorandum in support of the father's motion for relief from judgment, the father's attorney states that "healthcare costs were added to the agreement by stipulation of the parties."

[6] The costs were $1,750. The amount of attorney's fees was to be established at a later hearing.

California CSSD had requested that the DOR close its case against him, because the California CSSD was then garnishing the father's Social Security payments.[7]  In June, 2009, the mother filed another complaint for contempt.  Nothing in the record suggests that, prior to the filing of the mother's complaint in 2009, the Probate and Family Court was notified of the request by the California CSSD to DOR, or asked by any party, agency, or California court to cease enforcement efforts.[8]  A Probate and Family Court judge found the father in contempt for failure to pay $26,940.60 in child support, $54,432 in spousal support, $24,000 towards the child's college education, the child's uninsured medical expenses in the amount of

---

[7] In a February, 2009, letter to the father, the Massachusetts Department of Revenue (DOR) stated that it had "end-dated [his] support obligation" and "purged [his] arrears balance."  The letter noted, "For as long as you live in the Commonwealth, there is always the possibility that we may become involved in your CCS case in the future."  In a September, 2009, letter responding to an inquiry from the father, the DOR explained that, although it had closed the father's child support case, "[a]ny and all existing court orders remained in place . . . . Closing our case just meant that DOR was no longer taking action to enforce or collect the debt."

[8] Indeed, in June, 2011, a Los Angeles County Superior Court judge ruled:

"[The father] has twice been found guilty of contempt for failure to pay spousal and child support [in Massachusetts] . . . , substantial arrears still exist and, therefore, . . . the convicted defendant cannot seek modification of the spousal support award until the contempt is purged. . . . California's assumption of jurisdiction regarding spousal support is not intended to and does not deprive Massachusetts of ongoing jurisdiction to enforce its own orders."

$26,230, and the mother's legal fees and costs incurred in connection with prior and then-pending enforcement proceedings. A judgment of contempt entered on September 22, 2010, dated May 26, 2010,[9] established a schedule of monthly payments to be made toward these arrears. In August, 2010, the father sought relief from that judgment pursuant to Mass. R. Civ. P. 60 (b) (4), 365 Mass. 828 (1974).[10] The motion was denied later that month. In December, 2010, the father returned to California.

Discussion. We note as a preliminary matter that the father did not challenge the jurisdiction of the Probate and Family Court concerning the support orders, nor its authority to hold him in contempt for violation of those orders, prior to this appeal. Nonetheless, "a party has the right to raise subject matter

_____

[9] The father also was found in contempt for his continued involvement in nonprofit organizations and was ordered to resign from his membership in several of those organizations. The father makes no claim that this portion of the judgment was not within the jurisdiction of the Probate and Family Court, and we do not address his other claim, raised for the first time on appeal, regarding this portion of the order.

[10] Also in June, 2010, the Los Angeles County Superior Court notified the parties that it would hold a hearing for a "determination of arrears." The parties informed the Probate and Family Court judge who had issued the judgment of that pending hearing, and on August 23, 2010, the judge issued an order stating that "Massachusetts will assume sole jurisdiction over this matter." In June, 2011, a Los Angeles County Superior Court judge ruled, "As both the initiating [S]tate and now both parties' [S]tate of residence, California has jurisdiction to issue spousal support orders. The Massachusetts court cannot preclude otherwise appropriate jurisdiction by court order."

jurisdiction at any time." ROPT, Ltd. Partnership v. Katin, 431 Mass. 601, 607 (2000). A claim that a court lacks subject matter jurisdiction cannot be waived. See Harker v. Holyoke, 390 Mass. 555, 559 (1983), quoting Litton Business Sys. v. Commissioner of Revenue, 383 Mass. 619, 622 (1981) ("Subject matter jurisdiction cannot be conferred by consent, conduct or waiver"); Mass. R. Civ. P. 60 (b) (4).

1. Uniform Interstate Family Support Act. "UIFSA aims to cure the problem of conflicting support orders entered by multiple courts, and provides for the exercise of continuing, exclusive jurisdiction by one tribunal over support orders." Child Support Enforcement Div. of Alaska v. Brenckle, 424 Mass. 214, 218 (1997) (Brenckle). UIFSA establishes continuing, exclusive jurisdiction in the State issuing a support order, so as to ensure that the issuing State is the only State with jurisdiction to modify its order absent specified, narrow circumstances. G. L. c. 209D, § 6-611 (a) (1)-(2). Every State appears to have adopted some version of UIFSA. See Annot., Construction and Application of Uniform Interstate Family Support Act, 90 A.L.R. 5th 1 (2001). Cf. 42 U.S.C. § 666(f) (2012) (requiring States to adopt UIFSA in order to access Federal funding for child support enforcement).

"Under UIFSA, once one court enters a support order, no other court may modify that order for as long as the obligee, obligor, or

child for whose benefit the order is entered continues to reside within the jurisdiction of that court unless each party consents in writing to another jurisdiction."  Brenckle, supra at 218.  See G. L. c. 209D, §§ 2-205 (a),[11] 6-611 (a) (1)-(2).[12]  See also Draper

---

[11] General Laws c. 209D, § 2-205 (a), provides that the issuing State retains continuing, exclusive jurisdiction:

"(1) as long as [the State issuing the order] remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued; or

"(2) until [each party has] filed written consents . . . with the tribunal of [the issuing State] for a tribunal of another [S]tate to modify the order and assume continuing, exclusive jurisdiction."

See Cal. Fam. Code § 4909 (West 2013), which contains virtually identical language.

[12] General Laws c. 209D, § 6-611 (a) (1)-(2), provides:

"After a child support order issued in another [S]tate has been registered in the [C]ommonwealth, the responding tribunal of the [C]ommonwealth may modify that order only if . . . it finds that . . .

"(i) the child, the individual obligee, and the obligor do not reside in the issuing [S]tate;

"(ii) a petitioner who is a nonresident of the [C]ommonwealth seeks modification; and

"(iii) the respondent is subject to the personal jurisdiction of the tribunal of the [C]ommonwealth; or

". . . each of the parties who are individuals has filed a written consent in the issuing tribunal for a tribunal of the [C]ommonwealth to modify the support order and assume continuing, exclusive jurisdiction over such order."

v. Burke, 450 Mass. 676, 679 (2008); Peddar v. Peddar, 43 Mass. App. Ct. 192, 194-195 (1997); C.P. Kindregan, M. McBrien, & P.A. Kindregan, Family Law and Practice, § 30.6, at 255 (4th ed. 2013). The written consent must be filed in the issuing tribunal.  G. L. c. 209D, § 6-611 (a) (1)-(2).

Here, California issued the original support order.  The mother and child remained residents of California throughout the Massachusetts proceedings, and there is no indication that the parents filed with the California court their written consent to grant a Massachusetts court authority to modify the order issued by the California court.  In these circumstances, California remains the State of continuing, exclusive jurisdiction and accordingly is the only State with jurisdiction to modify its support order.  See Klingel v. Reill, 446 Mass. 80, 84 (2006), citing G. L. c. 209D, § 2-205 (c) (responding tribunal can modify support order only if issuing State "has, for some reason, lost its exclusive jurisdiction"); C.P. Kindregan & P.A. Kindregan, Massachusetts Domestic Relations Rules and Statutes Annot., § 7.6(11), Comment to G. L. c. 209D, § 6-611 (2014) (discussing "UIFSA philosophy that no other [S]tate should modify an order of another [S]tate which has

_____

See Cal. Fam. Code § 4960 (West 2013), which contains virtually identical language.

continuing, exclusive jurisdiction").[13]

a. Enforcement of California's order. To enforce judgments against a party who has moved from an issuing State that has continuing, exclusive jurisdiction to a second State, an issuing State may register an order for enforcement in the second State. See G. L. c. 209D, § 6-601. Once such an order is registered in the Probate and Family Court, that court becomes the "responding tribunal," and is "limited to recognizing and enforcing the order of the other [S]tate [because] under UIFSA[,] conceptually, the responding [S]tate is enforcing the law of another [S]tate" (quotations and citation omitted). C.P. Kindregan & P.A. Kindregan, Massachusetts Domestic Relations Rules and Statutes Annotated,

---

[13] The Full Faith and Credit for Child Support Orders Act, 28 U.S.C. § 1738B(e) (2012), likewise does not extend the jurisdiction of the Probate and Family Court to modification of a California court's support order. In relevant part, that statute provides:

> "A court of a State may modify a child support order issued by a court of another State if --
>
> "(1) the court has jurisdiction to make such a child support order pursuant to subsection (i); and
>
> "(2)(A) the court of the other State no longer has continuing, exclusive jurisdiction of the child support order because that State no longer is the child's State or the residence of any individual contestant; or
>
> "(B) each individual contestant has filed written consent with the State of continuing, exclusive jurisdiction for a court of another State to modify the order and assume continuing, exclusive jurisdiction over the order."

§ 7.6(3), Comment to G. L. c. 209D, § 6-603 (2014).

Thus, although the Probate and Family Court did not have jurisdiction to modify the California court's support order, it did retain jurisdiction to enforce that order.[14]  California's support order was registered for enforcement in the Commonwealth when the California CSSD transmitted a request to the DOR that was then entered on the Probate and Family Court docket.  The transmittal specified that the Probate and Family Court could exercise jurisdiction over the California court's order "for enforcement only."  See G. L. c. 209D, § 6-602.

b.  Modification of California's order.  The judgment entered on September 22, 2010, dated May 26, 2010, held the father in contempt for his failure to comply with earlier orders and judgments that had entered in the Probate and Family Court beginning in 2009.  The father contends that portions of the orders constituted modifications of the California order, and that the Probate and Family Court did not have jurisdiction to modify the California

---

[14] Although the Probate and Family Court judge could, in the absence of any motion to dismiss brought during the proceedings, exercise jurisdiction as the judge did here, we note that where orders of the Probate and Family Court and a California court conflict, the California court's orders control.  G. L. c. 209D, § 2-207 (b) ("If a proceeding is brought under this chapter and two or more child support orders have been issued by tribunals of the [C]ommonwealth or another [S]tate . . . [1] if only one of the tribunals would have continuing, exclusive jurisdiction under this chapter, the order of such tribunal shall control and be so recognized").

support order. UIFSA does not define "modification," but, "where UIFSA is silent, the [Full Faith and Credit for Child Support Orders Act, 28 U.S.C. § 1738B (2012),] may help fill any gaps." Spencer v. Spencer, 10 N.Y.3d 60, 66 (2008). Section 1738B(b) of that statute defines modification as "a change in a child support order that affects the amount, scope, or duration of the order and modifies, replaces, supersedes, or otherwise is made subsequent to the child support order."

In this case, the California support order provided that the father's child support obligations would end essentially when the child completed twelfth grade or attained the age of nineteen,[15] and was silent on the issue of the costs of the child's college education and her uninsured medical expenses. The California Legislature, however, has expressly limited child support to minor children, or through the completion of high school for a child under age nineteen who is residing with a parent and attending school full-time.[16] The

---

[15] The order stated that child support payments were to continue "until the minor child reaches majority, dies, marries, becomes self-supported, emancipates or until further order of Court, whichever first occurs."

[16] The California legislature "expressly contemplated that Civil Code [§] 196 would only apply to minors and that to the extent that an obligation devolves upon a parent to provide education to an adult child, it is limited to the completion of a high school education." Jones v. Jones, 179 Cal. App. 3d 1011, 1017 (1986). The California support order provides that, "Pursuant to Civil Code [§] 196.5, child support shall continue as set forth above and extend

Probate and Family Court judgment of contempt appears to have required the father to continue to pay child support beyond the child's attaining the age of nineteen, thereby affecting the duration of child support. The judgment also required the father to pay $24,000 toward the child's college education costs and $26,230 toward the child's uninsured medical expenses; these obligations constitute modifications of the California court's support order because they affected the amount, scope, and duration of support and were made subsequent to the order. These impermissible modifications of the California order exceeded the jurisdiction of the Probate and Family Court.

c. <u>Effect of impermissible modification</u>. As stated, prior to this appeal, the father had not challenged the jurisdiction of the Probate and Family Court to issue such orders, nor its authority to hold him in contempt for violation of those orders. Nonetheless, "[w]here a court lacks subject matter jurisdiction, the judgment is void and time limitations for raising the issue are inapplicable." <u>ROPT, Ltd. Partnership</u> v. <u>Katin</u>, 431 Mass. at 605. See Mass. R. Civ. P. 60 (b) (4).

---

as to any unmarried child who has attained the age of [eighteen], is a full-time high-school student, and resides with a parent until such time as he or she completes the [twelfth] grade or attains the age of [nineteen,] whichever first occurs." Although California Civil Code § 196.5 has been repealed, essentially the same language appears in Cal. Fam. Code § 3901 (West 2013).

Rule 60 (b) "strikes a balance between serving the ends of justice and preserving the finality of judgments," and "may not be used as a substitute for a timely appeal" (citation omitted). Harris v. Sannella, 400 Mass. 392, 395 (1987). See Harker v. Holyoke, 390 Mass. at 558 ("If we were to permit such an attack as a general rule, the finality of judgments would be substantially impaired"). Therefore, "when a court has rendered final judgment in a contested action, a party may not litigate that court's subject matter jurisdiction except in certain circumstances." Matter of Dugan, 418 Mass. 185, 186 (1994). One such circumstance is when "[a]llowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government." Restatement (Second) of Judgments § 12 (1982).

Permitting enforcement of those portions of the Probate and Family Court's orders that modify the California order not only would infringe on the authority of the California courts, which have continuing, exclusive jurisdiction, but also would upset a carefully constructed uniform set of laws adopted in all fifty States. See Scanlon v. Witrak, 110 Wash. App. 682, 686 (2002) (allowing rule 60 [b] motion where Georgia had continuing, exclusive jurisdiction under UIFSA and Washington State court had modified Georgia child support order). Cf. In re Marriage of Mitchell, 181 Ill. 2d 169, 174-176 (1998) (erroneous order that expressed child support

payments as percentage of income was in violation of statute, but was voidable, not void, in part because it was purely State matter and did not "implicate the authority of another tribunal" [citation omitted]).

Because the Probate and Family Court had no jurisdiction to modify the California support order, the portions of the orders that required the father to pay child support for a period beyond that established by the California court, part of the child's college education costs, and the child's uninsured medical expenses were void. The father, therefore, could not be found in contempt for violating the void portions of those orders. Cf. Kendall v. Kendall, 340 S.W.3d 483, 501, 503-504 (Tex. App. 2011) (when reviewing collateral attack, court will limit "review to determining whether the record affirmatively and conclusively negates existence of jurisdiction" to modify support order of State that had continuing, exclusive jurisdiction, and will not consider "whether court otherwise erred in rendering its judgment"). The judgment of contempt is enforceable insofar as it concerns portions of the orders that enforced the terms of the California support order.

2. Attorney's fees and costs. The father also was adjudged in contempt for his failure to pay attorney's fees of $6,930 that had been awarded to the mother, and costs of $2,370 that had been incurred in connection with the mother's travel to Massachusetts to

attend court proceedings.  The father apparently has not paid these fees and costs.  The judgment also ordered the father to pay additional attorney's fees and costs incurred by the mother in pursuing the 2009 complaint for contempt.

Under UIFSA, the responding tribunal may award attorney's fees and costs against an obligor if "an obligee prevails."  See G. L. c. 209D, § 3-313 (b).[17]  Cf. Arnell v. Arnell, 416 S.W.3d 188, 201 (Tex. App. 2013) (affirming award of attorney's fees to obligee under UIFSA where court registered and enforced foreign judgment).  The imposition of attorney's fees and costs is an appropriate mechanism for enforcement of the California order, and part of the enforcement power of the Probate and Family Court as the responding tribunal.

The father does not argue that the Probate and Family Court lacked jurisdiction to award attorney's fees, but only that the Court erred in awarding fees in this case.  The father contends, without record support and, indeed, without pointing to any purportedly improper fee, that the attorney's fees and costs awarded were

---

[17] An order registered in the Commonwealth that issued in another State "is enforceable in the same manner and is subject to the same procedures as an order issued by a tribunal of the [C]ommonwealth." G. L. c. 209D, § 6-603 (b).  Because the father did not contest the validity or enforcement of California's order, as he was entitled to do under G. L. c. 209D, § 6-607 (a), the registered order could "be enforced by all remedies available under the laws of the [C]ommonwealth."  G. L. c. 209D, § 6-607 (b).  See also G. L. c. 209D, § 3-305 (a)-(e) (setting forth duties and powers of responding tribunal including power to award reasonable attorney's fees as well as other fees and costs).

incurred in connection with improper efforts to modify the California support order. We analyze this claim pursuant to Mass. R. Civ. P. 60 (b) (6), which permits granting relief from a judgment for "any other reason justifying relief." Relief under this provision is available only in "extraordinary circumstances." Sahin v. Sahin, 435 Mass. 396, 406 (2001). Because the Probate and Family Court's enforcement powers under UIFSA include the authority to award attorney's fees and costs, and because the father has not included in the record anything that indicates how the judge arrived at the fee award, the components of that award, or that any portion of the fee award pertains to fees incurred in conjunction with efforts directed toward the impermissible modifications, the father has not established the extraordinary circumstances that would justify such relief.[18]

Conclusion. The judgment of contempt is vacated. The matter is remanded for entry of a judgment consistent with this opinion, holding the father in contempt and obligating payment only for his failure to comply with such portions of the Probate and Family Court's orders that enforced the California child and spousal support order,

---

[18] We note that the extensive litigation in this case arose as a result of the father's chronic nonpayment of his support obligations, and that, in her efforts to obtain child and spousal support payments owed, the mother apparently was required to expend significant amounts on private investigators and travel to Massachusetts.

and the fees and costs associated with such enforcement.

<u>So ordered</u>.