MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:    2021 ME 40
Docket:      Cum-20-299
Argued:      June 3, 2021
Decided:     July 27, 2021

Panel:       MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

PATRICIA H. PARKS MONTEITH

v.

GEORGE H. MONTEITH JR.

GORMAN, J.

[¶1]  Patricia H. Parks Monteith appeals from a judgment of the District Court (Portland, *Cashman, J.*) declining Patricia's request to register in Maine a child support order issued in Maryland against George H. Monteith Jr. as to the parties' four children.  Patricia contends that the court erred by concluding that, because the Maryland court lacked subject matter jurisdiction to enter the order, it cannot be registered for enforcement in Maine.  We disagree and affirm the judgment.

[¶2]  This matter requires us to interpret, for the first time, certain provisions of the Uniform Interstate Family Support Act (UIFSA), 19-A M.R.S. §§ 2801-3401 (2021).  To place the events of the present matter and the parties' arguments in some context, we begin with the background of UIFSA.

[¶3]    UIFSA was promulgated by the National Conference of Commissioners on Uniform State Laws (NCCUSL)[1] in 1992 to create a uniform national system for the issuance, enforcement, and modification of child and spousal support.  UIFSA cmt., Prefatory Note(I)-(II), *included with* L.D. 986 (121st Legis. 2003); *In re Ball,* 123 A.3d 719, 723 (N.H. 2015).  In 1996, Congress mandated that enactment of UIFSA was a precondition to states' eligibility for obtaining federal grant money to fund child and spousal support programs.  Child Care and Development Block Grant Amendments of 1996, Pub. L. No. 104-193, 110 Stat. 2105 (codified as amended at 42 U.S.C.S. § 666(f) (LEXIS through Pub. L. No. 117-26, approved July 6, 2021)).  By 1998, all fifty states had adopted UIFSA—Maine in 1993, P.L. 1993, ch. 690, §§ A-2, A-3 (effective July 1, 1995), and Maryland in 1996, 1996 Md. Laws 667.[2]  *See* UIFSA cmt., Prefatory Note(I); *Ball,* 123 A.3d at 723.

[¶4]  The hallmark of UIFSA is the "one-order system," by which a child support order issued in one state is enforceable in every other state, but which prevents any other state from modifying that order except in limited circumstances, all for the purposes of eliminating competing child support

---

[1]  The NCCUSL is now referred to as the Uniform Law Commission.  UIFSA cmt., Prefatory Note(I), *included with* L.D. 986 (121st Legis. 2003).

[2]  The UIFSA statutes applicable to this appeal are effectively identical in Maine and Maryland.

orders or forum-shopping. *Chalmers v. Burrough*, 472 P.3d 586, 590-91 (Kan. Ct. App. 2020) (stating that, before UIFSA, "often multiple, inconsistent obligations exist[ed] for the same parent" and there was "injustice in that parents could void their responsibility by moving to another jurisdiction and having their support obligations modified or even vacated" (alteration omitted) (quotation marks omitted)); *see LeTellier v. LeTellier*, 40 S.W.3d 490, 493 (Tenn. 2001) ("UIFSA is intended to recognize that only one valid support order may be effective at any one time." (quotation marks omitted)); *Ball,* 123 A.3d at 723; *Case v. Case*, 103 P.3d 171, 174 (Utah Ct. App. 2004); *Child Support Enf't Div. of Alaska v. Brenckle*, 675 N.E.2d 390, 392 (Mass. 1997).

[¶5]  A person may seek registration of an issuing court's child support order in the appropriate court of any other state for enforcement and/or modification.  19-A M.R.S. §§ 3150-3153, 3251-3256; Md. Code Ann., Family Law §§ 10-340 to 10-343, 10-348 to 10-353 (LEXIS through legis. effective June 1, 2021, of the 2021 Reg. Sess. of the Gen. Assembly).  Registration occurs upon the petitioning party's submission of certain documentation to the court of the registering state.  19-A M.R.S. §§ 3151, 3152(1); Md. Code Ann., Family Law §§ 10-341, 10-342(a); *see Hawley v. Murphy*, 1999 ME 127, ¶ 9, 736 A.2d 268.

4

[¶6]   Once such an order is registered, the nonregistering party may challenge the validity or enforcement of the registered order and request a hearing, at which it is the nonregistering party's burden to prove one or more of eight possible defenses, among them, that "[t]he alleged controlling order is not the controlling order."  19-A M.R.S. §§ 3201, 3202, 3203(1)(H); Md. Code Ann., Family Law §§ 10-344, 10-345, 10-346(a)(8) (LEXIS through legis. effective June 1, 2021, of the 2021 Reg. Sess. of the Gen. Assembly); *Hawley*, 1999 ME 127, ¶ 9, 736 A.2d 268; *Brenckle*, 675 N.E.2d at 394.

[¶7]   If the nonmoving party does not object to the registration of the order, or if the nonmoving party does not successfully prove at least one of the defenses, the registration of the order is confirmed and the registered order may then be enforced in the new state as if it were the issuing state.  19-A M.R.S. §§ 3153(3),  3202(2), 3203(3), 3204; Md. Code Ann., Family Law §§ 10-343(c), 10-345(b), 10-346(c), 10-347 (LEXIS through legis. effective June 1, 2021, of the 2021 Reg. Sess. of the Gen. Assembly); *Hawley*, 1999 ME 127, ¶ 9, 736 A.2d 268.

[¶8]   Notwithstanding the broad powers to *enforce* a child support order in every state, UIFSA circumscribes the ability of other states to *modify* the initial order.  *See* 19-A M.R.S. § 3152(3) ("Except as otherwise provided in this

chapter, a tribunal of this State shall recognize and enforce, but may not modify, a registered support order if the issuing tribunal had jurisdiction."); Md. Code Ann., Family Law § 10-342(c); *Ball,* 123 A.3d at 723; *Cohen v. Cohen*, 25 N.E.3d 840, 845 (Mass. 2015). It sets out the general rule that when an issuing state enters a child support order, the issuing state retains continuing, exclusive jurisdiction to modify that order:

> **1. Tribunal has continuing, exclusive jurisdiction.** A tribunal of this State that has issued a support order consistent with the laws of this State has and shall exercise continuing, exclusive jurisdiction to modify its child support order if the order is the controlling order and:
>
> > **A.** At the time of the filing of a request for modification this State is the residence of the obligor, the individual obligee or the child for whose benefit the support order is issued; or
> >
> > **B.** Even if this State is not the residence of the obligor, the individual obligee or the child for whose benefit the support order is issued, the parties consent in a record or in open court that the tribunal of this State may continue to exercise jurisdiction to modify its order.

19-A M.R.S. § 2965(1); *see* Md. Code Ann., Family Law § 10-308(a) (LEXIS through legis. effective June 1, 2021, of the 2021 Reg. Sess. of the Gen. Assembly); UIFSA cmt. to 19-A M.R.S. § 2965, *included with* L.D. 986 (121st Legis. 2003) (calling this section "the most crucial provision in UIFSA"). The Act identifies only three circumstances in which the continuing, exclusive

6

jurisdiction to modify the child support order passes from the issuing state to another state:

[¶9] First, pursuant to 19-A M.R.S. § 3255(1), "[i]f all of the parties who are individuals reside in [the modification state] and the child does not reside in the issuing state, a tribunal of [the modification state] has jurisdiction to enforce and to modify the issuing state's child support order in a proceeding to register that order." *Accord* Md. Code Ann., Family Law § 10-352(a).

[¶10] Second, if section 3255(1) does not apply, jurisdiction passes to the modification state when

(1) Neither the child, nor the obligee who is an individual, nor the obligor resides in the issuing state;

(2) A petitioner who is a nonresident of [the modification state] seeks modification; and

(3) The respondent is subject to the personal jurisdiction of the tribunal of [the modification state].

19-A M.R.S. § 3253(1)(A)(1)-(3); *accord* Md. Code Ann., Family Law § 10-350(a)(1)(i)-(iii); *Bowman v. Bowman*, 917 N.Y.S.2d 379, 382 (N.Y. App. Div. 2011). Notably, a transfer of jurisdiction pursuant to either of these first two circumstances does not involve any notice to or action in the issuing court but is instead based solely on the residence of the parties and the child and on the personal jurisdiction of the modification court.

[¶11] Third, jurisdiction to modify passes when "[the modification state] is the residence of the child, or a party who is an individual is subject to the personal jurisdiction of the tribunal and all of the parties who are individuals have filed consents in a record in the issuing tribunal for a tribunal of [the modification state] to modify the support order and assume continuing, exclusive jurisdiction." 19-A M.R.S. § 3253(1)(B); *accord* Md. Code Ann., Family Law § 10-350(a)(2); *see* 19-A M.R.S. § 2802(13-B) (defining "[r]ecord" as "information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form"); *Ball,* 123 A.3d at 723-24. This consent requirement is echoed in 19-A M.R.S. § 2965(2)(A), by which the issuing state is precluded from exercising continuing, exclusive jurisdiction if "[a]ll of the parties who are individuals file consent in a record with the tribunal of [the issuing state] that a tribunal of another state that has jurisdiction over at least one of the parties who is an individual or that is located in the state of residence of the child may modify the order and assume continuing, exclusive jurisdiction."[3] *Accord* Md. Code Ann.,

---

[3] The issuing state's exercise of continuing, exclusive jurisdiction is also precluded when "the [issuing state] tribunal's order is not the controlling order," that is, when an intervening order was properly issued after the order of which a party seeks modification. 19-A M.R.S. § 2965(2)(B) (2021); *accord* Md. Code Ann., Family Law § 10-308(b)(2) (LEXIS through legis. effective June 1, 2021, of the 2021 Reg. Sess. of the Gen. Assembly); *see* 19-A M.R.S. § 2967(2) (2021); Md. Code Ann., Family Law

8

Family Law § 10-308(b)(1) (LEXIS through legis. effective June 1, 2021, of the 2021 Reg. Sess. of the Gen. Assembly). These two provisions are complementary—section 2965 detailing for the issuing court how it is divested of modification jurisdiction and section 3253 detailing for the modification court how it obtains modification jurisdiction. *See* Md. Code Ann., Family Law §§ 10-308(b)(1), 10-350(a)(2).

[¶12] Unlike the first and second circumstances for a transfer of continuing, exclusive jurisdiction, this third circumstance requires action involving the issuing court, i.e., the filing of the parties' consent to the modification court's exercise of jurisdiction "in a record with the tribunal of [the issuing state]." 19-A M.R.S. § 2965(2)(A); *accord* Md. Code Ann., Family Law § 10-308(b)(1). The consent requirement is thus plainly imposed when the issuing court would otherwise retain continuing, exclusive jurisdiction over the matter because one of the parties or the child continues to live in the issuing state. *See* 19-A M.R.S. § 2965(1)(A); Md. Code Ann. § 10-308(a)(1).

---

§ 10-310(b) (LEXIS through legis. effective June 1, 2021, of the 2021 Reg. Sess. of the Gen. Assembly); *infra* ¶ 25.

## I. BACKGROUND

[¶13] On June 3, 2019, the Department of Health and Human Services[4] filed in the Maine District Court an affidavit and request for registration of a Maryland child support order on behalf of Patricia against George. *See* 19-A M.R.S. § 3001(1-A). That day, the court clerk issued a notice of registration of the order pursuant to 19-A M.R.S. § 3201. George challenged the registration of the Maryland order, requesting a hearing and asserting five defenses, including that the Maryland court lacked jurisdiction to issue its order, which would mean that the Maryland order was "not the controlling order." 19-A M.R.S. § 3203(1)(H); *see* 19-A M.R.S. §§ 3201(2)(B), 3202.

[¶14] After a testimonial hearing, by order dated September 16, 2020, the court made the following findings, which are supported by competent record evidence and which the parties do not dispute. *See Boyd v. Manter*, 2018 ME 25, ¶ 9, 179 A.3d 906. In 2002, Patricia and George were divorced in Maine by a decision of the District Court (Biddeford, *Stavros, CMO*), which contained, inter alia, a provision requiring George to pay child support to Patricia for the

---

[4] Although the Department filed the initial affidavit and request for registration, it was excused from the case during the hearing and is not participating in the present appeal.

10

parties' four children, who were then minors. At some point, Patricia and the children moved to Maryland, and George remained in Maine.

[¶15] Roughly ten years after the divorce, and after their oldest child had turned eighteen, Patricia initiated a proceeding in Maryland, seeking modification of the Maine child support order. In the Maryland modification action, neither party filed a consent in Maine to the Maryland court's exercise of jurisdiction to modify the Maine order. *See* 19-A M.R.S. § 2965(2)(A); Md. Code Ann., Family Law § 10-308(b)(1). Nevertheless, George did appear and participate in the Maryland modification proceedings, which culminated in the entry of an agreed-to modified child support order. That order purported to increase George's child support obligation for the three remaining minor children. It is this modified Maryland order that Patricia now seeks to enforce in the current registration action. George did not pay the amounts imposed in the modified Maryland order; instead, he continued to pay in accordance with the terms of the original Maine order. George has paid all child support sums due pursuant to the 2002 Maine order; the arrearage that Patricia claims— totaling $48,245.75—is for the additional amounts due only pursuant to Maryland's 2013 modification order.[5]

---

[5] The last of the parties' minor children turned eighteen early in 2019.

[¶16]  The District Court concluded that the Maryland order was void ab initio based on the parties' failure to file the required consents in Maine to the Maryland court's exercise of jurisdiction, and it therefore vacated the registration of the Maryland order on that basis.  On Patricia's motion for findings of fact and for reconsideration, the court also determined that George had not waived his right to object to enforcement of the Maryland support order.  Patricia appeals.

## II.  DISCUSSION

[¶17]  Three different child support events occurred in this matter: (1) Patricia obtained a child support order in Maine in 2002; (2) Patricia sought registration of the 2002 Maine order in Maryland and then obtained a modification of the Maine order in Maryland in 2013; and (3) in 2019, Patricia sought registration of the 2013 Maryland order in Maine for purposes of enforcing the additional Maryland-imposed obligations.

A.    Maine Proceedings in 2002

[¶18]  There is no dispute that Patricia, George, and the children all lived in Maine when the Maine District Court issued the initial child support order in 2002; that the District Court entered the initial order consistent with Maine law; and that the 2002 order was the only child support order then in existence.

*See* 19-A M.R.S.A. §§ 1653(8), 2001-2009 (1998);[6] 19-A M.R.S. § 3153(1) (stating that the "law of the issuing state . . . governs"); *MacDougall v. Dep't of Hum. Servs.*, 2001 ME 64, ¶ 8, 769 A.2d 829 ("Pursuant to UIFSA, the law of the state that issued the divorce decree governs the nature, extent, amount, and duration of the support obligation and payment of arrearages under the order."); *see also* 4 M.R.S. § 152(11) (2021); 19-A M.R.S. § 103 (2021) (setting out the District Court's jurisdiction as to child support). Thus, according to the plain language of section 2965(1)(A), Maine had continuing, exclusive jurisdiction to modify the 2002 child support order.

B.    Maryland Modification Proceedings

[¶19]  In 2013, Patricia obtained a modification of the Maine order in Maryland, where she and the children lived. Because there is no dispute that George, the obligor, was still a resident of Maine, however, neither the first nor the second circumstance for the transfer of continuing, exclusive jurisdiction could apply. *See* 19-A M.R.S. §§ 3253(1)(A), 3255(1); Md. Code Ann., Family Law §§ 10-350(a)(1), 10-352(a); *supra* ¶¶ 9-10; *see also* 19-A M.R.S. § 2802(13) (defining "[o]bligor"). Maryland could therefore obtain jurisdiction to modify

---

[6]  Maine's child support statutes have been amended on several occasions since 2002, but these amendments are not relevant to the current appeal. *E.g.*, P.L. 2007, ch. 142, § 1 (effective Sept. 2, 2007).

Maine's 2002 order—and Maine could be divested of that jurisdiction—only if the parties consented to the Maryland court's exercise of jurisdiction according to the third circumstance, that is, by filing "consents in a record in the issuing tribunal" in Maine. Md. Code Ann., Family Law § 10-350(a)(2); *see* 19-A M.R.S. § 2965(2)(A); *accord* 19-A M.R.S. § 3253(1)(B); Md. Code Ann., Family Law § 10-308(b)(1). It is undisputed, however, that neither Patricia nor George filed in Maine a consent to the Maryland court's exercise of jurisdiction. The question presented in this case is what the consequence is of Patricia and George's failure to comply with section 2965(2)(A).

C.     Maine Proceedings in 2019

[¶20]  In 2019, after George failed to comply with the Maryland order, Patricia sought registration and enforcement of the Maryland order in Maine. The District Court concluded that the failure to file consents in Maine deprived the Maryland court of jurisdiction to modify the child support order, that is, that Maine had retained its continuing, exclusive jurisdiction over the parties' child support as a matter of law. Thus, when Patricia sought to register the Maryland order for enforcement in Maine, the court declined to do so based on the conclusion that the Maryland order was void, having been issued without the required Maine consents, and therefore, George met his burden of establishing

that the Maryland order was "not the controlling order" pursuant to section 3203(1)(H).

[¶21] Patricia argues that this conclusion was error. Although she concedes that filing the consents in Maine was required by section 2965(2)(A)—and that those consents were not, in fact, filed—she asserts that the failure to file the consents presents no impediment to the enforcement of the Maryland order in Maine. Her argument is that she substantially complied with UIFSA and, at most, the failure to file consents created a barrier of procedural dimension rather than jurisdictional, which George could—and did—waive by participating in the Maryland modification action without objection.

[¶22] Subject matter jurisdiction "refers to the power of a particular court to hear the type of case that is then before it." *In re Child of Nicholas P.*, 2019 ME 152, ¶ 11, 218 A.3d 247 (quotation marks omitted); *see Jurado v. Brashear*, 782 So. 2d 575, 577 (La. 2001) ("Jurisdiction . . . primarily indicates the power to adjudicate."). In contrast, a court's claim-processing rules, such as notice, pleading, and arbitration requirements, dictate how a court is to consider a case over which it has jurisdiction. *Landmark Realty v. Leasure*, 2004 ME 85, ¶ 9, 853 A.2d 749; *Windham Land Tr. v. Jeffords*, 2009 ME 29, ¶ 20,

967 A.2d 690. Whereas claim-processing rules and lack of personal jurisdiction may be waived, lack of subject matter jurisdiction cannot be waived and may be raised at any time. M.R. Civ. P. 12(h)(1), (3); *Hawley*, 1999 ME 127, ¶ 10 & n.6, 736 A.2d 268; *Cohen*, 25 N.E.3d at 844-45; *Dissell v. Trans World Airlines*, 511 A.2d 441, 443 (Me. 1986).

[¶23] To determine whether the consent requirement of UIFSA is jurisdictional or procedural, we interpret the statute de novo by evaluating its plain meaning to effectuate the Legislature's intent. *See Wuori v. Otis*, 2020 ME 27, ¶ 6, 226 A.3d 771. We first interpret UIFSA's "plain language by taking into account the subject matter and purposes of the statute, and the consequences of a particular interpretation." *Id.* (quotation marks omitted); *see Fuhrmann v. Staples the Off. Superstore E., Inc.*, 2012 ME 135, ¶ 27, 58 A.3d 1083 ("[S]tatutes must be read together and in light of the entire statutory scheme to produce cohesive results."). If the plain language is ambiguous, we will then consider other indicia of legislative intent, including the statute's legislative history. *Wuori*, 2020 ME 27, ¶ 7, 226 A.3d 771.

[¶24] The UIFSA provisions at issue allow courts and litigants to identify which single court has "continuing, exclusive jurisdiction" to modify a child support order. 19-A M.R.S. §§ 2965(1), (2), 3253(1)(B), 3255(1); *accord* Md.

Code Ann., Family Law §§ 10-308(a), (b), 10-350(a)(2), 10-352(a).  Patricia's interpretation of these provisions would have us conclude that the Legislature simply did not mean "jurisdiction" when it used the word "jurisdiction" time and time again.  *See Wuori*, 2020 ME 27, ¶ 10, 226 A.3d 771 (affording a statutory term its "commonly understood" meaning); *Jade Realty Corp. v. Town of Eliot*, 2008 ME 80, ¶ 8, 946 A.2d 408 (stating that a statute "may not be interpreted in such a way to read a provision out of existence or to render it surplusage").  Patricia's interpretation would also wreak havoc on the word "exclusive," which is defined as "[n]ot accompanied by others; single or sole"; "[n]ot divided or shared with others"; and "[n]ot allowing something else." *Exclusive*, The American Heritage Dictionary (5th ed. 2016); *see Dep't of Hum. Servs. v. Monty*, 1998 ME 11, ¶ 6, 704 A.2d 401 (relying on the dictionary definition of statutory language in interpreting a child support provision).  By its very nature, the continuing, exclusive jurisdiction for which UIFSA expressly provides places jurisdiction to modify in only *one court* at a time, thereby *necessarily* precluding the same exercise of jurisdiction by any other court.

[¶25]  Indeed, it is for just this reason that UIFSA also contains a guide to determining which order is "the controlling order" when more than one child support order has been issued:

**1. Recognition of orders; one tribunal.** If a proceeding is brought under this chapter and only one tribunal has issued a child support order, the order of that tribunal controls and must be so recognized.

**2. Recognition of orders; 2 or more tribunals.** If a proceeding is brought under this chapter and 2 or more child support orders have been issued by tribunals of this State or another state or a foreign country with regard to the same obligor and same child, a tribunal of this State having personal jurisdiction over both the obligor and individual obligee shall apply the following rules and by order shall determine which order controls and must be recognized.

**A.** If only one of the tribunals has continuing, exclusive jurisdiction under this chapter, the order of that tribunal controls.

**B.** If more than one of the tribunals has continuing, exclusive jurisdiction under this chapter:

**(1)** An order issued by a tribunal in the current home state of the child controls; or

**(2)** If an order has not been issued in the current home state of the child, the order most recently issued controls.

**C.** If none of the tribunals have continuing, exclusive jurisdiction under this chapter, the tribunal of this State shall issue a child support order, which controls.

19-A M.R.S. § 2967(1)-(2); *accord* Md. Code Ann., Family Law § 10-310(a)-(b)

(LEXIS through June 1, 2021, of the 2021 Reg. Sess. of the Gen. Assembly). As

the state in which the child support order was initially issued and the state

where the obligor continues to reside, and in the absence of consents to another state's exercise of jurisdiction, Maine's 2002 order remained the controlling order pursuant to sections 2965(1)(A) and 2967.

[¶26] Moreover, when the Legislature has intended for a UIFSA requirement to be procedural rather than jurisdictional, it has expressly said so. Title 19-A M.R.S. § 3256 requires a party who has obtained a modified child support order in another state to file a certified copy of that order with the Maine court that previously had continuing, exclusive jurisdiction in the matter.[7] It also states, however, that the failure to file such notice is sanctionable but "does not affect the validity or enforceability of the modified order of the new tribunal having continuing, exclusive jurisdiction." 19-A M.R.S. § 3256. In short, if the consent requirement of section 2965 were intended to be merely procedural, rather than jurisdictional, the Legislature could have stated so expressly, as it did with regard to the notice requirement of section 3256. *See HL 1, LLC v. Riverwalk, LLC*, 2011 ME 29, ¶ 25, 15 A.3d 725 ("It is apparent that the Legislature knew how to create statutory language that allows [the intended result in other provisions] . . . . Consequently, the absence

---

[7] The record suggests that Patricia did not file a copy of the Maryland modified order in Maine, contrary to 19-A M.R.S. § 3256 (2021).

of such language [in this provision] demonstrates the Legislature's intent [to provide for a different result]."); *Anthem Health Plans of Me., Inc. v. Superintendent of Ins.*, 2012 ME 21, ¶ 17, 40 A.3d 380. Section 2965 dictates not *how* to approach child support modification cases (considerations addressed to claim-processing rules), but *whether* any of the courts of a given state may address a child support modification case at all—that is, subject matter jurisdiction. *See In re Child of Nicholas P.*, 2019 ME 152, ¶ 11, 218 A.3d 247.

[¶27] We therefore interpret the unambiguous plain language of UIFSA to state that the consent requirement set out in sections 2965(2)(A) and 3253(1)(B) is jurisdictional rather procedural, as the District Court concluded. To interpret UIFSA as Patricia suggests would violate both the letter and spirit of UIFSA. Section 2965(1) contains the default provision that Maine has "continuing, exclusive jurisdiction" to modify its own child support orders. Sections 2965(2)(A), 3253(1), and 3255(1) then set out the narrow circumstances in which Maine no longer has "continuing, exclusive jurisdiction" to modify its own orders. There is no dispute that none of these three circumstances was satisfied in this matter: George remained a resident of Maine, which precluded the Maryland court's exercise of jurisdiction pursuant

to Md. Code Ann., Family Law §§ 10-350(a)(1) or 10-352(a), *see* 19-A M.R.S. §§ 3253(1)(A), 3255(1), and no consents were filed on the record in Maine to Maryland's exercise of jurisdiction pursuant to section 2965(2)(A),[8] *see* Md. Code Ann., Family Law § 10-350(a)(2); *Penkul v. Matarazzo*, 2009 ME 113, ¶ 14, 983 A.2d 375 ("The Massachusetts Probate and Family Court [as the issuing court] still has continuing, exclusive jurisdiction over the matter because the parties have not consented to another forum.").

[¶28] Because the plain language is unambiguous, we need not consider other indications of the Legislature's intent in enacting UIFSA, *see Wuori*, 2020 ME 27, ¶¶ 6-7, 226 A.3d 771, but we are not unaware of the abundant other authorities—in the official commentary to the uniform statute as promulgated by the NCCUSL, in the interpretations of the courts of a vast majority of other jurisdictions, and in the legislative history of Maine's UIFSA enactment itself—that confirm identical language to set out the jurisdictional limits on child support modifications.[9]  Aside from the persuasiveness of these

---

[8]  Patricia's additional suggestion—that Maryland obtained jurisdiction because she and George consented to it *in the Maryland court's record*—is untenable given the statute's language requiring the parties to "file consent in a record with the tribunal *of this State*" as the issuing state.  19-A M.R.S. § 2965(2)(A) (2021).

[9]  *See* UIFSA cmt. to 19-A M.R.S. § 2965, *included with* L.D. 986 (121st Legis. 2003); L.D. 1802, Statement of Fact (116th Legis. 1994); L.D. 986, Summary (121st Legis. 2003); Family Law Advisory Comm'n, Report to the Maine Legislature, J. Standing Comm. on Judiciary (Mar. 2003); *Cohen v. Cohen*, 25 N.E.3d 840, 845-48 (Mass. 2015) (concluding that a modified child support order was void and

authorities in their own right, Maine's UIFSA specifically encourages us to interpret the statute consistent with these other jurisdictions: "In applying and construing this Act, consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it." 19-A M.R.S. § 3401; *see HL 1, LLC*, 2011 ME 29, ¶ 26 & n.11, 15 A.3d 725 (relying on other states' interpretations of a uniform statute). "[W]e consider the interpretation of UIFSA by other jurisdictions . . . because uniform laws should be interpreted to effect their general purpose to make uniform the laws of those states that enact them." *Ball,* 123 A.3d at 723 (quotation marks omitted).

[¶29] The intent of UIFSA, in Maine and across the country, is to promote uniformity in child support through the one-order system, by which enforcement is broadly available and modification is narrowly circumscribed. UIFSA cmt. to 19-A M.R.S. § 2965. The one-order system is implemented, in

---

unenforceable in factually similar circumstances); *Stone v. Davis*, 148 Cal. App. 4th 596, 601-02 (Cal. Ct. App. 2007) (stating that, to conclude that the parties' participation in a child support matter in another state was sufficient to divest the issuing court of its continuing, exclusive jurisdiction would be to "ignore[] the statute's clear language and render[] the requirement of filing a written consent in the issuing court superfluous"); *Chalmers v. Burrough*, 472 P.3d 586, 594 (Kan. Ct. App. 2020) ("UIFSA thus modified Kansas courts' general jurisdiction to consider out-of-state child-support orders . . . ."); *Case v. Case*, 103 P.3d 171, 174 (Utah Ct. App. 2004) (noting that although "Utah district courts are given exclusive jurisdiction over matters relating to divorce, child custody, paternity, and child support, . . . the district courts' jurisdiction over child support proceedings was modified when Utah passed the Uniform Interstate Family Support Act" (quotation marks omitted)).

22

part, through the detailed provisions setting out which single state enjoys continuing, exclusive jurisdiction in a host of different circumstances. *Id.* That intent is compromised—and the cornerstone provisions of UIFSA thereby rendered impotent—by allowing multiple states to fashion child support orders regarding the same family at the same time, the exact problem UIFSA was intended to fix.[10] *See Cohen*, 25 N.E.3d at 848 (declining to "upset a carefully constructed uniform set of laws adopted in all fifty States").

---

[10] We are not persuaded by Patricia's contention that her "substantial compliance" with UIFSA is sufficient to allow for the registration and enforcement of the Maryland order in Maine or that, in any event, George may no longer collaterally attack the Maryland order on this basis because he did not challenge the Maryland court's jurisdiction before the Maryland court. Substantial compliance is allowed in other contexts, if at all, for harmless, technical oversights, often in relation to notice requirements, *see, e.g.*, *Erickson v. State*, 444 A.2d 345, 350 (Me. 1982), but substantial compliance cannot convey subject matter jurisdiction pursuant to UIFSA where it otherwise does not exist.

Nor is George precluded from collaterally attacking the Maryland order on the basis of jurisdiction because he did not make that same argument to the Maryland court, to whose jurisdiction he submitted. By participating in the Maryland proceedings, George waived his right to challenge its personal jurisdiction, not its subject matter jurisdiction. *See Fore, LLC v. Benoit*, 2012 ME 1, ¶ 5, 34 A.3d 1125 ("The term 'personal jurisdiction' refers to a court's power to bring a person into its adjudicative process." (alteration omitted) (quotation marks omitted)); *Penkul v. Matarazzo*, 2009 ME 113, ¶ 8, 983 A.2d 375 (characterizing the lack of personal jurisdiction as a "procedural defect"); *supra* ¶ 22. In contrast, a judgment issued without subject matter jurisdiction is void, and thus, subject matter jurisdiction may be raised at any time, including sua sponte by the court. *Hawley v. Murphy*, 1999 ME 127, ¶ 8, 736 A.2d 268. "A challenge to a court's subject matter jurisdiction is one instance where a collateral attack on a judgment is permissible, because fundamental lack of authority in the court to enter the judgment for want of jurisdiction either of the subject matter or over the parties transcends any waiver of the right of appeal." *Faith Temple v. DiPietro*, 2015 ME 166, ¶ 21, 130 A.3d 368 (alterations omitted) (quotation marks omitted).

Indeed, consideration of the subject matter jurisdiction of a prior court is not only approved at common law, it is expressly required by UIFSA. *See* 19-A M.R.S. § 3152(3) (2021) (instructing Maine courts to evaluate the jurisdiction underlying another state's entry of a child support order: "Except as otherwise provided in this chapter, a tribunal of this State shall recognize and enforce, but may not modify, a registered support order *if the issuing tribunal had jurisdiction*." (emphasis added)); 19-A M.R.S. § 2967(2) (2021) (providing the means to determine which child support order is "controlling" in the face of multiple orders); *Cohen*, 25 N.E.3d at 847-48; *Hawley*, 1999 ME 127,

[¶30]  Patricia and George's failure to file consents pursuant to section 2965(2)(A) deprived the Maryland court of subject matter jurisdiction to modify Maine's 2002 child support order, the order Maryland issued was therefore void ab initio, and the Maine District Court correctly declined to register the Maryland order for enforcement in Maine on that basis.

The entry is:

Judgment affirmed.

---

Dana E. Prescott, Esq. (orally), Prescott Jamieson Murphy Law Group, LLC, Saco, for appellant Patricia H. Parks Monteith

Roger M. Champagne, Esq. (orally), Law Office of Roger M. Champagne, LLC, Biddeford, for appellee George H. Monteith Jr.

Portland District Court docket number FM-2019-471
FOR CLERK REFERENCE ONLY

---

¶¶ 10-11, 736 A.2d 268 (holding that UIFSA "authorize[s] the enforcement of registered support orders only if the issuing court had jurisdiction to issue the order" and stating that "Maine courts . . . do not have the authority to enforce a divorce order issued in another state by a court lacking subject matter jurisdiction to issue the order").

Our decision today is also consistent with our prior determinations that a judgment may be subject to collateral attack for lack of subject matter jurisdiction when "there is 'manifest abuse of authority, substantial infringement of the authority of another tribunal, or a need to entertain a belated challenge as a matter of procedural fairness.'" *State v. Thompson*, 2008 ME 166, ¶ 19 n.8, 958 A.2d 887 (quoting *Quirion v. Pub. Utils. Comm'n*, 684 A.2d 1294, 1296 (Me. 1996)); *see* Restatement (Second) of Judgments § 12 (Am. Law Inst. 1982).  Allowing registration and enforcement of the Maryland order, issued without subject matter jurisdiction, would substantially infringe upon Maine's continuing, exclusive jurisdiction, for which UIFSA plainly provides.